## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

In Re:                                              :
                                                    :
JOY GLOBAL, INC. f/k/a                              :
HARNISCHFEGER INDUSTRIES, INC.                      :
                                                    :
                              Debtor.               :
                                                    :   Civ. No. 01-039-LPS
_____                 :
                                                    :
JOY GLOBAL, INC. f/k/a                              :
HARNISCHFEGER INDUSTRIES, INC.                      :
                                                    :
                              Plaintiff,            :
                                                    :
         v.                                         :
                                                    :
WISCONSIN DEPARTMENT OF                             :
WORKFORCE DEVELOPMENT,                              :
                                                    :
                              Defendants.           :

### OPINION

Date Filed:      November 20, 2006
Date Decided: December 12, 2007

Laura Davis Jones, Scotta McFarland, and Bruce Grohsgal, PACHULSKI, STANG, ZIEHL,
YOUNG, JONES & WEINTRAUB LLP, Wilmington, DE; Paul F. Linn and Kristi S. Nelson
Foy, MICHAEL BEST & FRIEDLICH LLP, Milwaukee, WI, Attorneys for Plaintiff.

Stuart Drowos, Deputy Attorney General, DELAWARE DEPARTMENT OF JUSTICE,
Wilmington, DE; Peggy A. Lautenschlager, Attorney General and Richard Briles Moriarty,
Assistant Attorney General, WISCONSIN DEPARTMENT OF JUSTICE, Madison, WI,
Attorneys for Defendant.

*Leone P. Att*

**STARK, U.S. Magistrate Judge**

This bankruptcy case has a lengthy history, having already endured more than seven years

of litigation in Bankruptcy Court, District Court, and the Court of Appeals. In this Court alone,

four different judges have handled the case. Presently pending before the Court is a motion for

summary judgment filed by Plaintiff Joy Global, Inc. ("Joy"). Notwithstanding Joy's

understandable desire to bring this case to a conclusion, Joy's motion will be denied for the

reasons set forth below.

## **PROCEDURAL AND FACTUAL BACKGROUND**[1]

### 1. **The Parties**

Plaintiff Joy is the successor to Harnischfeger Industries, Inc. ("Harnischfeger").

Harnischfeger was a holding company that, at all relevant times, owned 80% of the stock of

Beloit Corporation ("Beloit"). Beloit, which was based in Beloit, Wisconsin, was a paper-

making company.

On June 7, 1999, Harnischfeger and Beloit (collectively, the "Debtors") filed voluntary

petitions for financial reorganization under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§

101-1330. In the wake of the Debtors' filing, Beloit's assets were divided into several business

units and sold. In this process, which took place between December 1999 and January 2000,

Beloit terminated at least 306 non-union employees ("Employees").

Defendant Wisconsin Department of Workforce Development ("Department") is an

---

[1]As is required in reviewing a motion for summary judgment, the factual statements contained in this opinion are either undisputed or presented in the light most favorable to the party opposing summary judgment, with any doubts resolved against the entry of summary judgment. *See Blackburn v. United Parcel Serv.*, 179 F.3d 81, 91 (3d Cir. 1999).

1

agency of the State of Wisconsin. Pursuant to Wisconsin law, the Department represents the

Employees, who claim that Beloit failed to pay them the full amount of severance benefits to

which they were entitled when they were terminated in 1999 and 2000. *See In re Harnischfeger*

*Industries, Inc.*, 270 B.R. 188, 190 (D. Del. 2001) ("*Harnischfeger I*"), *vacated in part and*

*remanded*, 2006 U.S. App. LEXIS 16344 (3d Cir. July 2, 2003) (opinion in court records at D.I.

118).

## 2.    **The Severance Plans**

Beloit adopted a severance plan on January 1, 1991, which it unilaterally replaced on

December 10, 1996. It is the 1996 Severance Policy ("1996 Policy") which is at issue here.[2] The

1996 Policy provides in its entirety:

> All U.S. non-union employees, who do not have recall rights, will be entitled to
> the following Severance benefits:
>
> 1.    Severance pay in the amount of one week's pay for each full year
> of service, with a minimum of four weeks and a maximum of twenty six weeks.
>
> 2.    Unused vacation for the current year and any accrued vacation
> required by law.
>
> 3.    Continuation of group medical coverage through the end of the
> month of the severance pay, provided the employee continues the appropriate
> contribution. This extended coverage will be counted as coverage time under
> COBRA requirements.
>
> Any exceptions to this policy requires [sic] the approval of the Corporate

---

[2]Under the 1991 policy, the maximum severance benefit was two months' salary. The more
generous terms of the 1996 Policy, which increased both the maximum and minimum payouts to
terminated employees, were adopted in the face of impending layoffs and were intended "to
provide enhanced severance payments to employees." *In re Joy Global, Inc.*, 346 B.R. 659, 663
(D. Del. 2006) (opinion in court records at D.I. 237).

Vice President of Human Resources.

Beloit again amended its severance policy on November 19, 1999, during the pendency of its bankruptcy petition. The 1999 Policy ("1999 Policy") is, as it states on its face, intended to replace the 1996 Policy.[3] The 1999 Policy provides:

> 1.     This policy, adopted and approved by Beloit Corporation, replaces all existing severance and/or involuntary termination policies dated prior to November 19, 1999. It applies to all U.S.-based, non-union employees currently assigned to the Paper Group who are not reassigned to the tissue or aftermarket segments of the rescaled Paper Group (as determined by Beloit Corporation) and who are involuntarily terminated without right or recall for reasons other than misconduct.
>
> 2.     Severance benefits provided by this policy amendment include the following:
>
>          a) Any pay and benefits to which the employee is entitled under the Worker Adjustment and retraining Notification Act ("WARN"), 29 U.S.C. 2101 to 2109;
>
>          b) Payment for accrued unused vacation for the current year and any other accrued vacation as required by law; and
>
>          c) Continuation of group medical coverage . . .

The benefits provided for under the 1999 Policy were less generous than those provided for by the 1996 Policy. In particular, the 1999 Policy, unlike the 1996 Policy, did not provide for

---

[3]The 1999 Policy actually consists of two policies: "Severance Policy #1," which applied to the employees who were part of Beloit's "Paper Group," including the Employees whom the Department is representing in this matter; and "Severance Policy #2," which applied to employees of other units Beloit was selling. As used in this opinion, "1999 Policy" refers only to "Severance Policy #1."

one week of severance pay for each year of service to Beloit. Another significant change was that the 1999 Policy included a reservation clause, by which Beloit stated that it "reserves the right to amend, modify, or terminate any of its policies or benefit plans at any time." The 1996 Policy had contained no such provision.

Upon their termination from Beloit, the Employees were provided severance benefits consistent with the 1999 Policy, not the more generous benefits they would have received under the 1996 Policy. On September 15, 2000, after investigating complaints from terminated Beloit employees, the Department issued its Final Determination that Beloit was liable to its former employees for unilaterally amending its severance pay policy after most employees had worked for years in reliance on the 1996 Policy. The Department wrote:

> This policy was relied upon by these employees when the company decided to file for bankruptcy protection. At that time, they made the difficult decision to stay with a company that had an uncertain future at best. Because employees had provided years of their service in anticipation of this benefit, they had substantially earned the severance pay when the employer decided to change its policy.
>
> . . . .
>
> An employer may not void a benefit policy when the benefit has already been substantially earned. In this case, the benefit was substantially earned as of November 19, 1999.

### 3.    **Bankruptcy Court: The Department's Proof of Claims**

On November 10, 2000, the Department filed proofs of claim against Harnischfeger and Beloit for the severance pay the Department had concluded the Debtors owed to the Employees. The proof of claim against Beloit sought more than $8 million, plus interest, on the theory that

4

Beloit had breached its contractual obligation to pay benefits to the Employees pursuant to the 1996 Policy.  The proof of claim against Harnischfeger sought at least $10 million in damages on the theory that Harnischfeger had tortiously interfered with the Employees' contractual rights under the 1996 Policy by inducing Beloit to replace the 1996 Policy with the less generous 1999 Policy.[4]

**4.     District Court: Proceedings Before Judge McKelvie**

On February 15, 2001, the District Court withdrew the reference to the Bankruptcy Court and the case was assigned to former United States District Court Judge Roderick R. McKelvie. (D.I. 4)  On February 27, 2001, Harnischfeger moved for summary judgment on two grounds: (1) that the Employees' claims were pre-empted by the federal Employee Retirement Income and Security Act ("ERISA"); and (2) that, under Wisconsin law, the Employees had no contractual right to severance benefits.  (D.I. 13-14)

On December 5, 2001, Judge McKelvie issued an opinion explaining that the state of the record and the briefing did not permit him to resolve the ERISA issue.  *See Harnischfeger I*, 270 B.R. at 198.  Judge McKelvie then proceeded to examine Wisconsin contract law, concluding that under Wisconsin law the Employees' right to severance benefits did not vest until termination.  Therefore, Beloit did not breach any contractual obligation by replacing the 1996 Policy with the 1999 Policy.  *See id.* at 198-203.  Accordingly, the Court granted summary judgment to Beloit on the Department's contract claim.  *See id.* at 203.  The opinion also stated:

---

[4]The Department's proof of claim against Harnischfeger states that it is also based on "alter ego/substantive consolidation."  Claim No. 11995 (D.I. 15, App. J).  The Department clarified during oral argument on Joy's pending motion that only the tortious interference claim remains against Harnischfeger.  (D.I. 284, Tr. at 32)

"Because the parties have not briefed whether this disposition also terminates the alternative theory presented in the [Department's] claim – tortious interference with contract – the court will not address the viability of this theory." *Id.*

On February 25, 2002, Judge McKelvie denied the Department's motion for reconsideration on state law grounds. (D.I. 106) Harnischfeger then moved for clarification that the summary judgment ruling applied not just to the breach of contract claim against Beloit but also to the tortious interference claim against Harnischfeger. (D.I. 107) In response, the Department conceded that "under the logic of the court's prior orders" – which had found no contractual relationship existed between Beloit and the Employees – it followed that the Department's tortious interference with contractual rights claim against Harnischfeger, too, must fail. (D.I. 109) Consequently, on March 27, 2002, Judge McKelvie granted Harnischfeger's motion for clarification and entered judgment granting summary judgment to Harnischfeger on the tort claim as well as to Beloit on the contract claim. (D.I. 111)

## 5.    **Third Circuit: The Department's Appeal**

On April 24, 2002, the Department filed a Notice of Appeal ("Notice"). (D.I. 113) As set forth in the Notice, the Department "appeal[ed] from the judgment entered on March 27, 2002 and from all relevant orders, opinions, rulings and decisions that preceded that judgment." *Id.* at 4. The Notice further specified that the "orders, opinions, rulings and decisions" from which the Department was appealing included the March 27, 2002 order granting summary judgment for Harnischfeger on the Department's tortious interference claim in addition to the December 5, 2001 opinion holding that Beloit was entitled to summary judgment on the contract claim. *See id.*

6

On July 2, 2003, the Court of Appeals for the Third Circuit ruled that this Court should have decided the threshold issue of whether the Department's claims were pre-empted by ERISA before reaching state law issues. *See In re Joy Global, Inc.*, 2006 U.S. App. LEXIS 16344 at *6 (3d Cir. July 2, 2003) ("*Joy I*"). In its Judgment of the same date ("Judgment"), the Court of Appeals ordered that this Court's March 27, 2002 judgment "be, and the same is hereby vacated." (D.I. 117) The Court of Appeals continued:

> The case is remanded to the District Court with instructions to determine whether Wisconsin law regarding the severance pay policy at issue is preempted by ERISA. The District Court will then apply whatever law it determines applicable to the issues arising from enforcement or abrogation of those contracts.

*Id.* The Court of Appeals neither analyzed nor endorsed this Court's holding that the Department's claims failed as a matter of Wisconsin law.

### 6. Bankruptcy Court: The Department's Settlement with Beloit

On April 16, 2004, the Bankruptcy Court approved a settlement agreement between the Department and Beloit, terminating the Department's breach of contract claim. Pursuant to the terms of the settlement agreement, the Department reserved the right to proceed on its claims against Harnischfeger – which by now had changed its name to Joy Global, Inc. (and will hereinafter be referred to as "Joy").

### 7. District Court: Proceedings Before Judge Jordan

On remand from the Court of Appeals, this case was reassigned to then-District Court Judge Kent A. Jordan.[5] (D.I. 120) All parties agreed that discovery should be stayed pending resolution of the ERISA pre-emption issue. (D.I.127-39) After denying Joy's motion for

---

[5]Judge McKelvie had resigned in June 2002.

summary judgment on ERISA pre-emption, Judge Jordan conducted a bench trial solely devoted to pre-emption. (D.I. 159, 208-09) On July 26, 2006, Judge Jordan issued an opinion finding that the 1996 Policy was not an "employee welfare benefit plan" within the meaning of ERISA and, therefore, the Department's remaining Wisconsin law claim against Joy was not pre-empted. *See In re Joy Global, Inc.*, 346 B.R. at 659.

Thereafter, the parties began to engage in discovery and discovery disputes. Joy subsequently moved to stay discovery on several grounds, including that the need for further discovery would be precluded if the Court agreed with Joy's argument that the law of the case doctrine precluded the reexamination of the Department's state law claims. (D.I. 248) On October 30, 2006, Judge Jordan held a status teleconference, during which he ruled that discovery would be temporarily halted until the Court considered the "prospect that this is going to go away on a purely legal issue instead of a factual one." (D.I. 253, Tr. at 6) Judge Jordan further noted that the parties had "some law of the case issues to deal with and I'm going to make you deal with them." *Id.* at 8.

Subsequently, on November 20, 2006, Joy filed the pending motion for summary judgment. (D.I. 257) On December 11, 2006, the Department responded to Joy's motion and filed its own motion for scheduling and planning. (D.I. 259, 261) On December 15, 2006, the same date that briefing on the instant motion was completed, Judge Jordan was elevated to the Court of Appeals for the Third Circuit. (D.I. 263-65)

## 8.    Third Circuit: Joy's Appeal

In the meantime, on August 24, 2006, Joy filed an interlocutory appeal from Judge Jordan's ERISA ruling. (D.I. 239) On December 10, 2007, the Third Circuit dismissed Joy's

8

appeal for lack of appellate jurisdiction. *See In Re: Joy Global, Inc.*, 2007 WL 4296746 (3d Cir. Dec. 10, 2007).

**9.     District Court: Recent Proceedings**

With Judge Jordan's elevation, this case was referred to Magistrate Judge Mary Pat Thynge. (D.I. 263) Then, on August 22, 2007, the parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636. (D.I. 277) Both parties requested that this Court resolve Joy's pending summary judgment motion as soon as possible, despite the pendency of Joy's interlocutory appeal. (D.I. 280, Tr. at 12) On September 24, 2007, the court heard oral argument on Joy's summary judgment motion. (D.I. 284)

## DISCUSSION

**I.     Law of the Case**

Joy's primary contention is that this Court's 2002 grant of summary judgment for the Debtors should be treated as "law of the case" and, therefore, summary judgment should be granted once again, without any independent review of the merits of the issues presented. In Joy's view, there has been no change in Wisconsin law since the time of Judge McKelvie's ruling. Since the Court of Appeals decided the Department's appeal solely on ERISA grounds, and did not address Wisconsin law, this Court's prior analyses of Wisconsin law remain "law of the case" and should be re-adopted.

The Department responds by emphasizing the fact that the Court of Appeals' 2003 Judgment resolving the Department's appeal "vacated" this Court's 2002 summary judgment ruling. Lower court determinations underlying a vacated judgment, the Department contends, have no law of the case effect. Therefore, this Court should begin anew to analyze Wisconsin

9

law.

The law of the case doctrine provides that "when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the litigation." *In the Matter of Resyn Corp.*, 945 F.2d 1279, 1281 (3d Cir. 1991) (internal quotation marks omitted). However, the law of the case doctrine "does not limit a federal court's power, rather, it directs its exercise of discretion." *Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997).

In this case, the Court agrees with the Department that the law of the case doctrine does not apply because the Court of Appeals vacated this Court's earlier grant of summary judgment to the Debtors. As the Supreme Court has explained, when an appellate court vacates a lower court's judgment, "the doctrine of the law of the case does not constrain either the District Court or, should an appeal subsequently be taken, the Court of Appeals." *Johnson v. Board of Education*, 457 U.S. 52, 53-54 (1982); *see also* 18A Fed. Prac. & Proc. § 4432 ("There is no preclusion as to matters vacated . . . .") (internal footnotes omitted). Instead, vacating a lower court's ruling "deprives that [lower] court's opinion of precedential effect." *O'Connor v. Donaldson*, 422 U.S. 575, 577 (1975); *see also Falcon v. General Telephone Co.*, 815 F.2d 317, 320 (5th Cir. 1987) ("In essence, when a judgment is vacated all is effectively extinguished.") (internal quotation marks and citations omitted).

Here, it is uncontested that the Court of Appeals vacated Judge McKelvie's order granting summary judgment. The appellate Judgment states so unambiguously: "the judgment of the said District Court entered on March 28, 2002, be, and the same is hereby <u>vacated.</u>"

10

Judgment at 2 (D.I. 117) (emphasis added).[6] Accordingly, the Judgment deprived this Court's prior ruling of any precedential effect. Thus, the law of the case doctrine imposes no constraint on this Court's review of the matters before it.

An additional reason that the law of the case doctrine does not apply here is because the Court of Appeals did not reach the Wisconsin law issues now before this Court. "[I]ssues raised but not reached on a prior appeal are not within the law of the case doctrine." *Laborers' Intern. Union of North America, AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 396 n.24 (3d Cir. 1994); *see also In re City of Philadelphia Litigation*, 158 F.3d 711, 718 (3d Cir. 1998) ("The law of the case doctrine . . . acts to preclude review of only those legal issues that the court in a prior appeal actually decided, either expressly or by implication . . . ."); *see also* 18A Fed. Prac. & Proc. § 4432 ("If the appellate court terminates the case by final rulings as to some matters only, preclusion is limited to the matters actually resolved by the appellate court . . . ."). As even Joy concedes, in disposing of the Department's appeal "the Court of Appeals did go out of its way to say that it wasn't addressing the state law issues, one way or another." (D.I. 284, Tr. at 9)

Moreover, the language of the appellate Judgment appears to contemplate that, on remand, this Court might ultimately find it necessary to reconsider state law issues. The Judgment states:

> The case is remanded to the District Court with instructions to determine whether
> Wisconsin law regarding the severance pay policy is preempted by ERISA. The

---

[6]Judge McKelvie's judgment was issued on March 27, 2002 and entered on March 28, 2002. (D.I. 111) It should also be noted that the portions of the appellate Judgment stating that this Court's judgment was "affirmed in part" are limited to the Department's challenge to this Court's administrative expense allocation and decision to allow Joy to withdraw deemed admissions. *See Joy I*, 2006 U.S. App. LEXIS 16344 at *8. Neither of these rulings are at issue here.

11

District Court will then apply <u>whatever law it determines applicable</u> to the issues arising from enforcement or abrogation of those contracts.

(D.I. 117) (emphasis added). Nothing in this language indicates that the Court of Appeals expected this Court simply to defer to the premature state-law analysis on which the earlier grant of summary judgment had been based.

The Court has considered Joy's contention that even if the law of the case doctrine "is not technically applicable because the Third Circuit vacated the final judgment, the policies underlying that doctrine still apply." (D.I. 257 at 6) Joy argues that because there has been no intervening change in Wisconsin law, "there is no reason to deviate from" Judge McKelvie's decisions. But, given that the law of the case doctrine does not apply here, the situation is as if there were no prior proceedings. There is, therefore, nothing from which to "deviate."

In sum, because this Court's prior judgment was vacated by the Court of Appeals, the law of the case doctrine simply does not apply.[7] Summary judgment will not be granted on this ground.

## II. Appellate Waiver

Joy next contends that, wholly apart from its law of the case argument, summary

---

[7]Even where the law of the case doctrine applies, it does not bar reconsideration of an issue in certain "extraordinary circumstances," including where there has been a change in the law or where reconsideration is necessary to prevent clear error or injustice. *See Council of Alternative Political Parties v. Hooks*, 179 F.3d 64, 69 (3d Cir. 1997). As set forth below in Part III, the Court has concluded, based in large part on a Wisconsin appellate court decision handed down years after Judge McKelvie granted summary judgment to Joy, that Joy is not entitled to summary judgment under Wisconsin law. It is not necessary, however, to determine whether any of the exceptions to the law of the case doctrine would be applicable here, since the doctrine itself is inapplicable. *See Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 988 F.2d 414, 430 n.20 (3d Cir. 1993).

12

judgment is proper due to appellate waiver. Specifically, Joy argues that the only issue the Department raised in its appeal was the appropriateness of this Court's grant of summary judgment to Beloit on the breach of contract claim. According to Joy, the Department failed to challenge on appeal this Court's grant of summary judgment to Joy on the tortious interference with contractual relations claim. Thus, Joy concludes, the Department waived its opportunity to further litigate the tort claim on remand and, therefore, summary judgment must follow.

The Department counters that it in fact appealed from the entirety of this Court's summary judgment rulings, including the grant of summary judgment to Joy on the tort claim. The Department explains that while its appellate briefs expressly addressed only its contract claim, and not also its tort claim, this was because the viability of the tort claim was entirely dependent on the viability of the contract claim.[8]

The Third Circuit has "consistently rejected . . . attempts to litigate on remand issues that were not raised in a party's prior appeal and that were not explicitly or implicitly remanded for further proceedings." *Skretvedt v. E.I. DuPont de Nemours*, 372 F.3d 193, 203 (3d Cir. 2004). As applied here, this means that the Department can press its tortious interference claim against Joy if, but only if, two conditions are satisfied: (1) the tort claim was raised in the Department's appeal, and (2) the tort claim was remanded for further proceedings. The Court finds that both

---

[8]The Department urges the Court to avoid Joy's appellate waiver argument based on an assertion that Judge Jordan stayed discovery for the limited purpose of considering the law of the case issue, rendering Joy's waiver argument "unauthorized." (D.I. 261 at 26-27) The Court is not persuaded. Nothing in Judge Jordan's comments preceding entry of the stay of discovery, nor anything in the stay order itself, limits the grounds Joy may assert in support of its motion for summary judgment. Moreover, appellate waiver would provide an independent basis for granting summary judgment and the issue is now fully briefed. There is no reason to defer ruling on the issue.

13

conditions have been met, and therefore, there has been no appellate waiver.

With respect to the first condition, the Department did raise in its appeal a challenge to this Court's grant of summary judgment to Joy on the tort claim. As an initial matter, the Department's Notice of Appeal indisputably preserved the Department's opportunity to present the tort claim to the Court of Appeals. *See* Notice (D.I. 113 at 4) (noting that the Department "appeal[s] from the judgment entered on March 27, 2002 [granting summary judgment to Harnischfeger on tort claim] and from all relevant orders, opinions, rulings, and decisions that preceded that judgment. . . . [including the] 'Order Granting Harnischfeger's Motion for Clarification and Ordering the Entry of Judgment' entered on March 27, 2002").

The question then becomes whether, subsequent to filing its Notice, the Department in its briefing waived its tort claim. When one examines the appellate briefs, one finds that the Department characterized the issue presented in a manner that encompassed both the contract claim and the tort claim. In its opening brief, the Department stated that the issue presented was as follows:

Was Beloit free, until it ended employment relationships with the workers, to unilaterally and retroactively retract the promises it made to the workers through the 1996 severance policy?

Appellant's Opening Brief at 2 (filed 9/17/02). This question raised for the Court of Appeals the viability of the tort and contract claims. If the Court of Appeals found that the answer to the issue presented was "yes," then neither the tort nor the contract claim could be maintained, because the 1999 Policy was a permissible and enforceable amendment to the 1996 Policy. If, however, the Court of Appeals answered the question presented in the negative, then the Department could potentially prevail on its tort claim against Joy as well as its contract claim

14

against Beloit.

Because this Court had granted summary judgment on the contract and the tort claims on the basis of the same perceived defect in both – namely, that the Employees had no enforceable contractual right to severance pay until they were terminated – it made sense for the Department to present the issue to the Court of Appeals in terms of Beloit's authority. That purported authority was what had defeated both of the Department's claims in this Court. The Department's decision not to craft the issue presented in a manner explicitly referencing the tort claim against Joy no more constituted a waiver of the tort claim than did its omission of explicit reference to the contract claim against Beloit constitute a waiver of the contract claim.

The viability of the tort claim was entirely dependent on the viability of the contract claim. Unless the Court of Appeals vacated or reversed this Court's determination that the Employees had no enforceable contractual right to severance pay under the 1996 Policy prior to termination, the tort claim could not be revived. Given the intertwined nature of the tort and contract claims, the Department's briefing on the viability of the contract claim also served as briefing on the viability of the tort claim.

Crucially, this is precisely how Joy read the Department's opening brief on appeal. Joy argued in its appellate brief that the Department "has, in effect, appealed this determination" – meaning the grant of summary judgment for Joy on the tort claim – "as well through an appeal of the breach of contract determination." Appellee's Answering Brief at 16 (filed 11/6/02) (emphasis added). Citing specific pages from the Department's opening brief, Joy told the Court of Appeals: "[The Department] has asked that the case be remanded to the District for trial on the issue of Joy Global's involvement in the transaction, if Beloit is found to have breached the

15

severance pay agreement." *Id.* at 7. Eliminating any doubt that the viability of the tort claim was "raised on appeal," Joy's statement of the issues presented included: "Did Joy Global tortiously interfere with the 1996 severance pay contract between Beloit and its former employees?" *Id.*; *see also id.* at 33, 54 (urging Court of Appeals to review viability of Department's tort claim *de novo* and affirm summary judgment on tort claim).

The manner in which the Department "raised" the tort claim on appeal, and Joy's understanding that the Department was indeed raising it, was entirely consistent with how the tort claim had been handled in this Court. Throughout the earlier proceedings, the parties – as well as this Court – had understood that the viability of the tort claim was dependent on the viability of the contract claim. Consequently, the tort claim was rarely discussed independent of the contract claim. For example, Joy did not file a separate motion for summary judgment on the tort claim; instead, it sought "clarification" that this Court's grant of summary judgment to Beloit on the contract claim also applied to the tort claim against Joy. (D.I. 107) In seeking clarification, Joy relied on the interrelatedness of the claims, encapsulating its argument as: "no contract; no tortious interference with existing contract relationships." *Id.* at 3. In response to Joy's motion, the Department conceded the dependence of the tort claim on the contract claim, acknowledging that "under the logic of the Court's prior orders" summary judgment should be entered for Joy on the tortious interference claim. (D.I. 109 at ¶¶ 10-11) Then, in granting Joy's motion for clarification and entering summary judgment on the tort claim, Judge McKelvie, too, relied on the interrelatedness of the claims:

> [The Department's] claim against Beloit was based upon Beloit's alleged breach
> of contract for failure to compensate the employees pursuant to its 1996 severance
> pay policy. [The Department] claimed Harnischfeger tortiously interfered with
> that contract. . . . [T]he Court understands [the Department] to be agreeing that

16

without a viable breach of contract claim against Beloit, [the Department] cannot maintain a claim for tortious interference against Harnischfeger.

(D.I. 110 at 1-2) Having treated the tort claim in this manner in this Court, it is hardly surprising that the Department continued to treat it the same way on appeal – as Joy clearly understood the Department was doing.

It is true, as Joy emphasizes, that the Third Circuit has held that "passing references" in an appellant's brief do not suffice to preserve an issue. (D.I. 257 at 10 (quoting *Skretvedt*, 372 F.3d at 203))[9] But to characterize the Department's appellate briefs as merely making passing reference to the tort issue misses the point. As already explained, given the dependence of the tort claim on the contract claim, and given the parties' and this Court's understanding of that dependence, the briefing addressing the Employees' contractual rights was addressed to the tort claim just as much as it was addressed to the contract claim. That the Department's appellate brief should be so read is confirmed, again, by Joy's appellate brief.

The conclusion that the Department adequately "raised" the tort claim on appeal is bolstered by two final observations. First, the cases in which the Third Circuit has found appellate waiver involve situations quite unlike those presented here, such as where a party seeks to press a new and contradictory theory that it had never presented in previous proceedings or had expressly waived. *See, e.g.*, *Skretvedt*, 372 F.3d at 202 (finding appellant-employee waived six of eight benefits claims when, in an earlier appeal from a grant of summary judgment for

---

[9]The Department's opening appellate brief made just one explicit mention of the tortious interference claim against Joy. This appeared in the Statement of the Case: "On November 10, 2000, the Department filed claims (a) against Beloit ..., and (b) against Harnischfeger based on alter ego, substantive consolidation and tortious interference with contract theories." Appellant's Opening Brief at 3-4, 10-11. There was no explicit reference to the tort claim in the Department's reply brief.

17

employer, employee briefed only two claims, and Court of Appeals remanded just these two claims); *Kopec v. Tate*, 361 F.3d 772, 775 (3d Cir. 2004) (holding that alternate theory of relief cannot be litigated on remand if it was not raised in prior appeal); *Frank v. Colt Industries,* 910 F.2d 90, 100 (3d Cir. 1990) (finding waiver of "new theory" appellant articulated for first time on appeal and had not previously referenced at any point in the "voluminous record of proceedings before the district court" or in earlier appeal); *Cowgill v. Raymark Indus., Inc.*, 832 F.2d 798, 803-04 (3d Cir. 1987) (holding litigant may not pursue on appeal "a new theory fundamentally at odds with her prior position"); *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 88 (3d Cir. 1987) (affirming district court finding that plaintiffs had waived claims for emotional injuries stemming from their husbands' deaths where, in prior appeal, plaintiffs had argued "sole issue" was dismissal of claims based on fear of cancer caused by household exposure).

Second, the appellate waiver doctrine, even where applicable, has exceptions, one or more of which is potentially operative here. *See, e.g., Huber v. Taylor*, 469 F.3d 67, 73, 75 (3d Cir. 2006) (explaining that appellate waiver may be excused "when the parties have had the opportunity to offer all the relevant evidence and when they are not surprised by issues on appeal ... [and no party] suffer[s] any unfair surprise or disadvantage" from further judicial consideration of the issue); *Bagot v. Ashcroft*, 398 F.3d 252, 256 (3d Cir. 2005) (excusing arguable waiver where it was "questionable" whether appellant had raised an issue in district court, issue was one of law and "closely related to arguments" appellant had clearly raised, and application of waiver doctrine might result in substantial injustice); *In re Am. Biochemicals Corp.*, 954 F.2d 919, 928 (3d Cir. 1992) (explaining appellate waiver may be excused where issue waived was "only an issue of law"); *Loretangeli v. Critelli*, 853 F.2d 186, 189-90 n.5 (3d

18

Cir. 1988) (same where "refusal to reach the issue would result in a miscarriage of justice").

Having found that the Department raised the tort claim on appeal, the second condition the Department must satisfy is plainly met, for the Court of Appeals remanded all state law issues that had been presented to it. The Court of Appeals did not reach state law issues but, instead, remanded to this Court to address ERISA pre-emption and, thereafter, "apply whatever law it determines applicable to the issues arising from enforcement or abrogation of those [severance pay] contracts." Judgment (D.I. 117) (emphasis added); *see also Joy I*, 2006 U.S. App. LEXIS 16344 at 7-8 (remanding to district Court to "resolve the ultimate issues of law surrounding the severance contracts at issue here") (emphasis added). The mandate to this Court is open-ended, contemplating that there may be multiple state-law issues to resolve. There is nothing to indicate that the only state law issue being remanded was the viability of the contract claim in the court

Therefore, the Court concludes that, in the course of the Department's appeal, the Department did not waive its tort claim. Thus, appellate waiver does not provide a basis for granting summary judgment to Joy.

### III. Wisconsin Law Regarding Severance Benefits

Having disposed of Joy's law of the case and appellate waiver contentions, it is necessary to determine whether Joy is entitled to summary judgment as a matter of Wisconsin law. Joy argues that pursuant to Wisconsin law an employer may alter employee benefit plans before an employee's right to such benefits has vested. (D.I. 284, Tr. at 6) Joy further asserts that "under Wisconsin law, severance pay does not vest prior to termination of employment." *Id.*

The first of these propositions is not in dispute. The Court agrees with Joy that, unless and until an employee's right to severance benefits vests, an employer may unilaterally and

19

retroactively diminish such benefits. It is the Court's understanding that the Department concurs on this point as well.

Where the Court disagrees with Joy, however, is as to <u>when</u> a right to severance benefits vests. This Court's analysis of Wisconsin law leads it to conclude that an employee's right to severance benefits vests upon the employee's "substantial performance" of the employment contract, which may occur well before termination. As elaborated further below, genuine disputes of material fact as to the timing of "substantial performance" – and, hence, vesting – preclude granting summary judgment to Joy.[10]

In assessing the viability of the Department's claim that Joy tortiously interfered with the Employees' contractual relations with Beloit, this Court's task is to predict what the Wisconsin Supreme Court would decide if confronted with the very same issue. *See Koppers Co. v. Aetna Cas. and Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir. 1996). In undertaking this task, this Court looks particularly to prior decisions of the Wisconsin Supreme Court and that state's lower courts. *See Mosley v. Wilson*, 102 F.3d 85, 92 (3d Cir.1996) ("If the highest court has not spoken to the issue, we can garner assistance from the decisions of the state's intermediate appellate courts in predicting how the state's highest court would rule").

It is a settled principle of Wisconsin law that "[p]ersonnel policies, offering stated benefits in exchange for the employee's service, are binding contracts upon the substantial performance of the requested services." *Demerath v. Nestle Co.*, 358 N.W.2d 541, 543 (Wisc. Ct. App. 1984). In other words, employment benefits plans are unilateral contractual offers by

---

[10]"Summary judgment is properly granted only if, upon review of the evidentiary record, 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Wisniewski*, 812 F.2d at 83 (quoting Fed. R. Civ. Proc. 56©).

the employer which an employee accepts by "substantially performing" his or her employment. *See Compton v. Shopko Stores, Inc.*, 287 N.W.2d 720, 726 (Wisc. 1980) (holding that performance of employment services "constituted acceptance of the offer" of participation in bonus plan, "and a binding unilateral contract was [thereby] formed"); *Zwolanek v. Baker Manufacturing Co.*, 137 N.W. 769, 772 (Wisc. 1912) ("Performance constitutes acceptance of the offer, and after performance" the offer of employment benefits "cannot be revoked") (internal citations omitted).

The test for substantial performance under Wisconsin law is whether the performance met the essential purpose of the contract. *See Plante v. Jacobs*, 103 N.W.2d 296, 298 (Wisc. 1960); *Micro-Managers, Inc. v. Gregory*, 516 N.W.2d 97, 103 (Wisc. Ct. App. 1988). Whether a contracting party's performance satisfies this test for substantial performance is a question of fact. *See In re Stevens Constr. Corp.*, 217 N.W.2d 291, 300 (Wisc. 1974); *Wm. G. Tannhaeuser Co. v. Holiday House, Inc.*, 83 N.W.2d 880, 882-83 (Wisc. 1957).

Where an employee has substantially performed, and a unilateral contract for employment benefits has thereby been formed, the employee's right to the offered employment benefits has vested. Once the benefits have vested, the employer may not unilaterally change the terms of the employment benefit. *See Schlosser v. Allis-Chalmers Corp.*, 271 N.W.2d 879, 889 (Wisc. 1978) ("To permit such a power of amendment to be exercised by an employer to effect a unilateral change in a retirement plan as to employees who have fully performed their services and whose rights under the plan thus became vested would truly be to render the plan a mere gratuity."); *Rosploch v. Alumatic Corporation of America* 251 N.W.2d 838, 844 (Wisc. 1977) (same).

Wisconsin law presumes that an employee's right to employment benefits vests during

21

the course of employment, "in the absence of contractual language or extrinsic evidence

indicating otherwise." *Roth v. City of Glendale*, 614 N.W.2d 467, 468 (Wisc. 2000). "A

presumption in favor of vesting that may be rebutted only by contrary indication in the language

of the agreement or extrinsic evidence safeguards retirees from potential economic devastation."

*Id.* at 472-73; *see also Bidlack v. Wheelabrator*, 993 F.2d 603, 611, 613 (7th Cir. 1993) (Cudahy,

J., concurring) (relied on in *Roth*, 614 N.W.2d at 472, and advocating rule that "would presume

that benefits vest unless there is evidence of an agreement to the contrary").[11] Hence, a court

applying Wisconsin law to an employment benefit plan that is silent as to whether the benefits it

provides vest must presume that the employee's right to such benefits does vest.

Many of these core principles of Wisconsin employment law were applied in the

Wisconsin Court of Appeals' recent decision in *Champine v. Milwaukee County,* 696 N.W.2d

245 (Wisc. Ct. App. 2005). This Court finds *Champine* to be a highly persuasive indicator of

how the Wisconsin Supreme Court would resolve the issue now pending here.

*Champine* involved a suit by a class of current and former employees of Milwaukee

County. These employees asserted that the County was liable for damages relating to a 2002

amendment to a 2000 County ordinance governing the use of accrued sick allowance at the time

of retirement. The employees argued they were entitled to the more generous benefits provided

by the 2000 ordinance. After a lower court granted summary judgment for the County, the Court

of Appeals found that, under the specific terms of the 2000 ordinance, the County "did not create

---

[11]While *Roth* involved retirement benefits, as opposed to severance pay, and a collective bargaining agreement, as opposed to a unilateral benefits policy, the Wisconsin Supreme Court's adoption of the vesting presumption does not appear to have depended on either of these factors. *See, e.g.*, 614 N.W.2d at 471 (suggesting interpretation of collective bargaining agreements is same as interpretation of "other contracts").

a unilateral promise of benefits to the Class for any specific period of time beyond the time the promise remained in effect." 696 N.W.2d at 250. Therefore, the 2002 amendment did not constitute a breach of contract to the extent the new, reduced benefits were applied prospectively from 2002 onwards.

However, the result was quite different with respect to the County's attempt to apply the 2002 amendment retroactively to sick leave benefits the employees had earned between 2000 and 2002. On this issue, the Wisconsin Court of Appeals held: "Once work is performed while a contract or unilateral promise is in effect, permitting retroactive revocation of that promise would be unjust and inequitable." *Id.* at 251 (emphasis added). Relying on Wisconsin Supreme Court precedent, including *Roth*'s "instructive" vesting presumption, *Champine* ruled that Wisconsin law "prohibit[s] retroactive changes in benefits already earned." *Id.*

Significantly, the *Champine* Court described its view of the issue as "consistent with [the] reasoning" of the Appellate Court of Illinois as expressed in *Kulins v. Malco*, 459 N.E.2d 1038 (Ill. App. Ct. 1984). *Champine* described *Kulins* as "reject[ing] [a] similar attempt[] . . . to change the terms of compensation or benefits after the work has been performed." 696 N.W.2d at 251-52.

*Kulins*, which involved severance benefits, was nearly identical to the instant case. There a class of former employees sought to recover severance pay under their corporate employer's original 1967 severance pay policy rather than under the corporation's modified, less generous 1975 policy. *See* 459 N.E.2d at 1040. Beginning within two weeks after the 1975 severance policy had been adopted, the employer laid off a large number of employees, paying them only the severance benefits provided for under the less generous 1975 policy. *See id.* at 1041. The

23

class of employees did not challenge the effectiveness of the 1975 policy going forward; they argued only that the new policy could not be applied retroactively to divest them of severance benefits they claimed to have earned between 1967 and 1975. *See id.* at 1041-42. On review of the trial court's grant of summary judgment for the class, the Illinois Appellate Court stated that the issue before it was "whether plaintiffs' rights to severance pay benefits pursuant to the provisions of the 1967 policy were vested or accrued, thereby precluding retroactive application of the 1975 modification." *Id.* at 1042-43. Concluding that the right to severance benefits had, indeed, vested during employment between 1967 and 1975, the appellate court affirmed summary judgment for the employees. *See id.* at 1043.

In *Champine* the Wisconsin court quoted at length from the Illinois court's analysis in

*Kulins*:

[T]he right to earn severance pay, a form of deferred compensation, arose and vested during the term of the 1967 policy and, consequently, survived the termination or modification of that policy. However, once the policy was modified on February 1, 1975, accrual under the 1967 policy terms ended. To hold otherwise would relegate the promise of severance pay to the illusory status of an offer revocable at the pleasure of the corporation and result in a harsh forfeiture to loyal, long-term employees. While plaintiffs' continued employment ... may have manifested acceptance of the terms of the 1975 policy, it cannot reasonably be said that their continued employment manifested their agreement to relinquish benefits earned prior to the modification. In making this determination, we emphasize that our decision does not affect the right of employers at will to modify severance pay provisions. It merely confines application of such modifications to prospective use only. In our opinion, this holding is in line with both reason and justice.

*Champine*, 696 N.W.2d at 251-52 (quoting *Kulins*, 459 N.E.2d at 1044-45) (internal citations omitted).

The holdings in *Champine* and *Kulins* are consistent with Wisconsin Supreme Court

discussions of the definition and purposes of severance pay. Wisconsin's Supreme Court has

24

stated:

> . . . [S]everance pay is a form of compensation for the termination of the employment relation primarily to alleviate the consequent need for economic readjustment. Severance pay is accumulated compensation for past services.

*Compton*, 287 N.W.2d at 725 (internal quotation marks and citations omitted). The Wisconsin

Supreme Court has further explained that employment benefits, of which severance pay is one

type, are part of the bargain that induces employees to remain in their jobs, making it inequitable

to change the bargain on which employees have relied:

> Employment benefits represent a critical bargaining tool for employers in attracting and maintaining personnel. The employer's promise of such benefits in an inducement to provide services for that particular employer to the exclusion of other employment opportunities. . . .
>
> . . . Allowing employers to modify past contractual obligations, when there is no indication that benefits are for a fixed term only, renders the promise of retirement benefits illusory and defies . . . equitable principles.

*Roth*, 614 N.W.2d at 472. To permit an employer unilaterally and retroactively to reduce the

amount of severance pay after an employee has worked pursuant to a policy providing for a

greater amount of severance pay, and after that employee has potentially relied on the promise of

severance to turn down other employment opportunities, would eliminate the "accumulated"

nature of severance and would diminish or eliminate the ability of severance to "alleviate the . . .

need for economic readjustment" attendant to termination of employment.

From these cases emerges a picture of how rights to severance benefits accumulate, vest,

and become due under Wisconsin law. While the employee accumulates the right to severance

pay during the course of her employment, the right vests (that is, becomes irrevocable) only upon

her substantial performance of her employment contract. *See Compton*, 287 N.W.2d at 725. The

25

employee's severance pay then becomes due (i.e., actually payable in the vested, accumulated amount) only upon the termination of her employment status by her employer. *Id.*

Based on the foregoing analysis of Wisconsin law, this Court predicts that, if faced with Joy's summary judgment motion now pending in this Court, the Wisconsin Supreme Court would deny the motion. The 1996 Policy constituted an offer of employment benefits by Beloit that became a binding unilateral contract upon the Employees' substantial performance of employment services. Subsequent to that time – a time the Court cannot determine as a matter of law, but rather a point on which it will be necessary to review the evidence[12] – Beloit had no authority to reduce or eliminate retroactively the benefits provided for under the 1996 Policy.

Joy argues that "the promise [Beloit] made [was] a promise that says if this policy is in effect when you are severed, here is what you are going to get." (D.I. 284 at 25) This may be the promise that Beloit believed it made, it may be the promise the Employees should have understood was being made, it may even, in fact, be the promise that extrinsic evidence can demonstrate was actually made. However, nothing in the language of the 1996 Policy mandates that, as a matter of Wisconsin law, Beloit's 1996 promise to the Employees must be read in this manner. To the contrary, because the 1996 Policy does not expressly address when the Employees' rights to severance benefits would vest, Wisconsin law presumes they vested at some point during the employment relationship and prior to termination.

Therefore, again, this Court predicts that if the pending motion for summary judgment

---

[12]The Court's determination that there are genuine issues of material fact does not foreclose the possibility that, after any appropriate and necessary discovery, one or both of the parties may move for summary judgment on the grounds that there was, or was not, substantial performance prior to the adoption of the 1999 Policy.

were presented to the Wisconsin Supreme Court, that Court would deny the motion.

Accordingly, this Court will deny Joy's motion for summary judgment.

## CONCLUSION

For the reasons set forth above, Joy's motion for summary judgment is DENIED. An

appropriate order will follow.

27