**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

In Re:

JOY GLOBAL, INC. f/k/a
HARNISCHFEGER INDUSTRIES, INC.,

Debtor.

Civ. No. 01-039-LPS

JOY GLOBAL, INC. f/k/a
HARNISCHFEGER INDUSTRIES, INC.,

Plaintiff,

v.

WISCONSIN DEPARTMENT OF
WORKFORCE DEVELOPMENT,

Defendants.

**MEMORANDUM ORDER**

Now pending before the Court are three motions: Defendant Wisconsin Department of Workforce Development's (the "Department's") Motion to Compel Discovery ("Motion to Compel") (D.I. 338); Plaintiff Joy Global, Inc.'s ("Joy's") Motion for a Protective Order, primarily in relation to the discovery sought in the Department's Motion to Compel ("Motion for Protective Order") (D.I. 345); and the Department's Motion for Leave to File a Supplemental Affidavit relating to its position on the other two motions ("Affidavit Motion") (D.I. 363). For the reasons set forth below, the Court has concluded: (i) a portion of the discovery the Department seeks is relevant and may need to be produced; (ii) Joy's objections as to overbreadth and undue burden are overruled; (iii) Joy timely and adequately raised attorney-

client privilege and work product objections to the requested discovery and has not waived these protections; and (iv) Joy must provide a privilege log identifying any responsive document with respect to which it is asserting privilege or work product protection.

Background[1]

The Department served document discovery requests on Joy on January 15, 2008. (D.I. 346 Ex. A) Joy served objections to the discovery requests on February 14, 2008. (D.I. 355 Ex. 1) On the same date, February 14, 2008, Joy filed its first request for a protective order, seeking to stay all discovery until after resolution of Joy's then-pending fifth motion for summary judgment. (D.I. 297, 298) That initial protective order motion also referenced the purported burdensomeness of certain of the Department's January 2008 discovery requests. (D.I. 315 at 2)

On February 15, 2008, the Court denied Joy's initial protective order motion. (D.I. 317) The parties subsequently engaged in discussions in an effort to narrow their discovery disputes. *See* D.I. 357 at 2, 14-15; D.I. 346 Exs. G, H; D.I. 355 Exs. 4-13; D.I. 346, Ex. I; D.I. 355 Exs. 14-24; D.I. 355 ¶¶ 3-31. The parties failed to reach agreement with respect to two of the Department's document requests: No. 2 and No. 3. (D.I. 338, 344)

On April 1, 2008, the parties contacted the Court to schedule a discovery teleconference. (D.I. 359 at 15) In accordance with the procedures set out in the Scheduling Order (D.I. 292 at ¶ 3f.), the parties submitted letters describing the issues to be addressed during the teleconference (D.I. 338, 344).

---

[1]Further background is provided in other opinions already issued in this matter. *See* D.I. 285, 317.

Meanwhile, on April 11, 2008, the Department field its Motion to Compel (D.I. 338) and, on April 15, 2008, Joy filed its Motion for Protective Order (D.I. 345). On April 16, 2008, during the discovery teleconference, the Court sustained Joy's objections to Request No. 3. (D.I. 353 at 32-33) The Court deferred ruling with respect to Request No. 2, seeking further briefing. The Court advised the Department:

> [I]n your response to the motion for protective order, you [the Department] will need to restate that request [No. 2], make it narrower in terms of time and also in a way that again gets to what it is you have articulated as a theory that the document would show on its face that it is Joy getting involved in the details and substance of the amendment [to Beloit's severance benefits plan] and not anything broader than that.

(D.I. 353 at 33-34) (emphasis added)

Thereafter, the parties completed briefing on the pending motions. On May 12, 2008, the Department filed its Affidavit Motion, which the parties have also briefed. (D.I. 363, 366, 369)

Relevance

Joy has objected to Request No. 2 on multiple grounds, including that it seeks documents that are not relevant to this case. At the time of the discovery teleconference, the Department's Request No. 2 sought the following:

> Please produce all documents that relate in any way to any legal services provided to either Beloit or [Joy or Harnischfeger], on or before November 19, 1999, by any attorney who is or was employed at Kirkland & Ellis concerning the Beloit severance policy documents dated November 19, 1999.

(D.I. 338 at 1) During the teleconference, the Court directed the Department to narrow its request. The Department agreed and represented that documents would be needed for only a two-month period. (D.I. 353 at 28)

The Department's Second Revised Request No. 2 now reads:

> Please produce all documents created or modified between October 1, 1999, and January 1, 2000, in the course of the provision of legal services by Kirkland & Ellis, that discussed or referred to any Beloit severance policies or packages.

(D.I. 357 at 2) Contrary to the Department's prior representation, this Second Revised Request No. 2 seeks three months of documents, not two. Also, unlike the earlier version of Request No. 2, Second Revised Request No. 2 is not expressly limited to documents concerning the November 19, 1999 severance policy, which is the policy relevant to this litigation. Most importantly, Second Revised Request No. 2 is not limited to documents that show involvement with the severance plans by Harnischfeger or Joy, as it would render responsive any document referring at all to Beloit's severance plan. The relevant communications are those between Kirkland & Ellis ("K&E") and Harnischfeger or Joy, not between K&E and Beloit.

The Court concludes that the relevant time period is October 1, 1999 through November 30, 1999. The relevant Beloit severance policy was issued on November 19, 1999. If there are documents that are going to show that Harnischfeger – Joy's predecessor, as the parent of Beloit – was, in the Department's terms, "pulling the strings" in causing Beloit to modify its severance plan (D.I. 353 at 7, 8), such documents will have been created or modified in the period immediately before or immediately after the adoption of Beloit's new severance plan.

Therefore, the relevant documents are as follows:

> Documents created or modified between October 1, 1999 through November 30, 1999 showing communications between Harnischfeger or Joy, on the one hand, and Kirkland & Ellis, on the other hand, relating to the Beloit severance plan that was issued on or about November 19, 1999 (hereinafter referred to as the "Relevant Request").

Overbreadth and Undue Burden Objections

Having found that documents responsive to the Relevant Request are relevant only begins the analysis. Joy has asserted other objections to the production of such documents: overbreadth, undue burden, attorney-client privilege, and attorney work product protection. The Court addresses the first two of these objections in this section and discusses the latter two objections in the following sections.[2]

With respect to Joy's objection of overbreadth, the Court agrees that the Department's various iterations of Request No. 2 were overly broad. However, by narrowing the Department's request to the Relevant Request, no valid overbreadth objection remains.

With respect to Joy's objection of undue burden, the Court again observes that the Relevant Request is substantially narrowed from what the Department was initially seeking. While some perhaps significant degree of burden will be imposed on Joy to work with its attorneys at K&E to identify responsive documents in what is represented to be a massive record of a lengthy, complex bankruptcy representation, *see, e.g.*, D.I. 348 at 3 (referring to "tens of thousands of documents . . . [from] Joy Global's chapter 11 bankruptcy case . . . [that] included 56 jointly administered debtors and continued for more than six years . . . [and] consisted of 13,373 petitions"), the Court concludes that, considering all the circumstances, including the

[2]It appears that Joy withdrew its overbreadth objection to Request No. 2 at some point prior to the teleconference with the Court. *See, e.g.*, D.I. 355 Ex. 21 at 3. Joy's undue burden objection may have been untimely. *Compare* D.I. 315 at 2 (Joy's "Request for Protective Order" explaining that providing discovery sought by Department would require "review at great cost [of] the tens of thousands of privileged documents generated during the very long and complex Harnischfeger and Beloit bankruptcy cases") *with* D.I. 353 at 30 (Department explaining its basis for concluding Joy failed to assert undue burden objection). Because the Court is overruling Joy's overbreadth and undue burden objections, it is not necessary to determine whether these objections were timely and not withdrawn.

substantial relevance of any responsive documents, that this burden is not a sufficient basis on which to deny the Relevant Request. (How the Court will handle the privilege and work product objections is discussed below.)

In this regard, the Court observes that while K&E's representation of Joy and related entities was both lengthy and far-reaching, K&E kept track of the time it devoted to the representation in multiple distinct "matters." (This is evident from documents concerning the Department's Affidavit Motion.) The record shows that the Joy representation was segregated by K&E into at least eleven different matters, and quite likely many more. (D.I. 367 at 10-18)[3] Only two of these matters appear to involve issues that might come within the scope of the Relevant Request. These are: "Matter 316 – Employee Issues," which is described as involving "activities related to the Debtors' employee benefits policies, compensation and retention issues" and "Matter 336 – Project B," which is described as involving "analyzing . . . certain strategic opportunities available to the Debtors with respect to the divestiture of Beloit Corporation and its affiliates." (D.I. 367 at 12, 17) It may well be that in searching for responsive documents, Joy and its attorneys at K&E need only review K&E's files associated with Matters 316 and 336.

---

[3]The record shows that K&E billed time to eleven Joy matters numbered 309 through 338. (D.I. 367 at 10-18) In the documents before the Court, many numbers between 309 and 338 are skipped; numbers below 309 and above 338 are not referenced. It may well be that K&E kept track of its representation of Joy using more than just the eleven matter numbers documented in the record before the Court. The finer the distinctions K&E used, the more carefully delineated the firm's records are likely to be, and, accordingly, the less onerous the burden of identifying responsive documents is likely to be.

Attorney-Client Privilege and Attorney Work Product Protection

Having overruled Joy's objections to the Relevant Request based on relevance, overbreadth, and undue burden, the Court next turns to the issues of attorney-client privilege, work product protection, and waiver. Joy contends that it need not produce any responsive documents because they are all protected from discovery by the attorney-client privilege and/or as attorney work product. (D.I. 338 at 1) The Department counters that Joy waived any such privileges during a 2006 trial before Judge Jordan on the issue of whether Beloit's severance plans constituted an ERISA plan. *See, e.g.*, *id.* at 1-3.

"The attorney-client privilege protects communications between attorneys and clients from compelled disclosure. It applies to any communication that satisfies the following elements: it must be (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *In re Teleglobe Communications Corp.*, 493 F.3d 345, 359 (3d Cir. 2007). Similarly, the attorney work product doctrine protects from disclosure materials prepared by an attorney for a client in anticipation of litigation, absent a showing of necessity or other justification for disclosure by the party seeking the documents. *See* Fed. R. Civ. Proc. 26(b)(3). Joy did not provide the Department with a privilege log, identifying specific documents to which it was asserting that the privilege applied. Rather, Joy asserted privilege and work product protection as a "blanket" basis for failing to produce any of the discovery the Department sought by Request No. 2.

As an initial matter, the Court finds that documents responsive to the Relevant Request are potentially within the scope of attorney-client privilege and work product protection. Because the Relevant Request seeks documents showing communications between Harnischfeger

or Joy and their attorneys, K&E, such documents may very well meet the criteria for privilege and attorney work product.

The Court cannot yet determine if any particular responsive document is privileged or protected from disclosure because Joy has not produced a privilege log. The Department argues that the absence of a privilege log dooms Joy's assertion of privilege (D.I. 357 at 12), but, in the circumstances presented here, the Court does not agree. A document-by-document privilege log is not always necessary when a party has, in good faith, asserted other non-privilege objections to the discoverability of a whole range of materials. *See* Fed. R. Civ. P. 26(b)(5), Adv. Comm. Note to 1993 Ams. ("The obligation to provide pertinent information concerning withheld privileged materials applies only to items 'otherwise discoverable.' If a broad discovery request is made . . . and the responding party believes in good faith that production of [the requested] documents . . . would be unduly burdensome, it should make its objection to the breadth of the request . . . ."). In these circumstances, to require that a privilege log be prepared by the date of responses to document requests even when a party has additional good faith bases to object to the discovery, might invite abuse. *See generally Burlington No. 8 v. U.S. District Court*, 408 F.3d 1144, 1144-45 (9th Cir. 2005). Here, Joy believed in good faith that Request No. 2 was objectionable on the basis of relevance, overbreadth, and undue burden, and (through communications with counsel and by filing requests for a protective order) made these objections known to the Department.

With its non-privilege objections now overruled, the time has come for Joy to provide specific document-by-document assertions of privilege or work product protection if it is going to continue to refuse to produce documents responsive to the Relevant Request. As the party

opposing discovery, Joy has the burden of showing that all the elements of the privilege and/or work product protection are satisfied. *See Teleglobe*, 493 F.3d at 359; Fed. R. Civ. Proc. 26(b)(3). To enjoy these protections, it must also be the case that the client did not confer with an attorney for the purpose of committing a crime, fraud, or tort. *See Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 862; D.I. 348 at 9.

Joy has not yet satisfied its burden. To do so, it must identify documents responsive to the Relevant Request. Then, to the extent it wishes to continue to object to production of any of these documents based on attorney-client privilege and/or work product protection, it must provide the Department with a privilege log with sufficient detail to show a prima facie basis to support Joy Global's non-production of the document. *See Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust*, 230 F.R.D. 398, 406 n.14 (D. Md. 2005) ("[T]he standard for testing the adequacy of the privilege log is whether, as to each document, it sets forth facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed.").

Waiver

The Court further disagrees with the Department's insistence that Joy waived any privilege in connection with the ERISA trial. (D.I. 357 at 12) According to the Department, at the ERISA trial Joy was:

> trying to prove that the Beloit severance policies were an ERISA plan. . . . And to prove that defense, they elicited privileged information from two of their witnesses about conversations each of them had separately with a Vicki Hood . . . a specialist in ERISA law, an attorney at Kirkland & Ellis.

(D.I. 353 at 12) Through questioning, Joy elicited testimony to the effect "that it had gotten advice of counsel that the policy was an ERISA plan." (D.I. 353 at 14; *see also* D.I. 353 at 12-14 (describing "the most critical" of the Department's examples of "waiver"))

The Court does not agree that there has been a waiver. Disclosure of the fact that a client has consulted an attorney, and even disclosure that an attorney approved a course of conduct, does not waive the privilege otherwise attaching to communications between an attorney and client on the subject of the consultation. *See Libbey Glass, Inc. v. Oneida Ltd.*, 197 F.R.D. 342, 346-47 (N.D. Ohio 1999). The disclosure, for instance, that a client discussed with an attorney the "legal ramifications" of a proposed course of conduct, or received a "green light" from an attorney for a subsequently-pursued course of conduct, does not waive the privilege, notwithstanding the implicit disclosure of the general nature of the attorney's advice. *See Libbey*, 197 F.3d at 346; *see also Polyvision Corp. v. Smart Technologies, Inc.*, 2006 WL 581037, at *6 (W.D. Mich. Mar. 7, 2006) (holding "mention[] in passing" by client "[m]erely identifying the topic of conversation" with attorney "[did] not disclose the contents of the communications [and did] not constitute a waiver of the privilege"). Broad disclosure of the nature of the consultation does not, in and of itself, disclose "the substance of the communications" between the attorney and client and, therefore, preserves the privilege. *Libbey*, 197 F.R.D. at 346; *see also United States v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989) ("Where a defendant neither reveals substantive information, nor prejudices the government's case, nor misleads a court by relying on an incomplete disclosure, fairness and consistency do not require the inference of waiver."). "Courts have perceived a difference between an opaque reference to an attorney's advice and disclosure that illuminates the facts and analysis underlying that advice." *Libbey*, 197 F.R.D. at

346; *see also In re Dayco Corp. Derivative Securities Litigation*, 99 F.R.D. 616, 618 (S.D. Ohio 1983) (finding press release summarizing attorney's findings and conclusions did not waive privilege, since neither facts nor attorney's full report were disclosed); *In re Brand Name Prescription Drugs Antitrust Litigation*, 1995 WL 531805, at *1-2 (N.D. Ill. Aug. 8, 1995) (finding no waiver of privilege in testimony that antitrust counsel discussed issue at meetings and essentially advised client to comply with the law).

If the law were otherwise, privilege logs would not be of any use, since an adequate privilege log must make a prima facie showing of each of the elements of the privilege, including providing some information on the subject matter of the materials being withheld. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) (finding privilege log to satisfy burden where it identified attorney and client involved; nature of document withheld; all persons or entities shown on or intended to be or known to have been shown the document or informed of its substance; date document was generated, prepared, or dated; and information on subject matter of each document); *Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659, 662 (D. Colo. 2000) (finding assertion of privilege inadequate where party asserting privilege failed to provide "description of the nature of the communication sufficient to enable [opposing party] to assess the applicability of the claimed privilege").

Furthermore, it appears that Joy had no intention of waiving the privilege. *See Vicinanzo v. Brunschwig & Fils, Inc.*, 739 F. Supp. 891, 893-94 (S.D.N.Y. 1990) (finding no waiver of privilege where client disclosed nothing "more than a glimpse" into legal advice received, "summariz[ing] counsel's opinion in conclusory and unrevealing terms, thereby indicating an intention to . . . preserve the privilege"). As the Department repeatedly stresses, when Joy's

questioning of one witness appeared to be moving into privileged matters, Judge Jordan warned counsel of the possibility of waiver – and then Joy's counsel stopped the questioning. (D.I. 338 at 2; D.I. 353 at 12-13) Although Joy's counsel later recalled the same witness and returned to the topic of communications with K&E, the testimony elicited was not privileged; it amounted to nothing more substantive than the fact there had been discussions and that K&E believed the severance plan would be an ERISA plan. Joy's conduct, in this regard, is more consistent with an intent to preserve the privilege rather than an intent to waive.

Furthermore, as the Third Circuit has explained, there is no waiver where the disclosing party has "not interjected the advice of counsel as an essential element of a claim in this case." *Rhone-Poulenc*, 32 F.3d at 864. Where the advice of counsel "is an explicit, and important, element" of a party's claim – for instance, in rebutting a claim of willful patent infringement or establishing that a statement to police by a criminal defendant was not voluntary – disclosure of the existence of such advice may constitute waiver. *Livingstone v. North Belle Vernon Borough*, 91 F.3d 515, 537 & n.36 (3d Cir. 1996). Where this is not the case – where, for example, reference to attorney advice is made only to help establish some other element of the claim, like state of mind – there is no waiver. *See id.* The issue in the ERISA trial was whether Beloit's severance plan qualified as an ERISA plan. The test for determining whether a plan is an ERISA plan is whether "from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *In re Joy Global*, 346 B.R. 659, 667 (D. Del. 2006) (internal quotation marks omitted). An attorney's opinion as to whether a particular plan is an ERISA plan is not an

element of proving the existence of an ERISA plan.[4]

For all of the same reasons as given with respect to attorney-client privilege, the Court further concludes that Joy did not waive attorney work product protection. *See also generally Hobley v. Burge*, 433 F.3d 946 (7th Cir. 2006) (holding attorney may assert work product protection even when client waives it).

The Department's Additional Contentions

The Department further argues that even if the privilege and work product protection were not waived, the Motion to Compel should be granted because Joy waited too long to seek a protective order and because Joy did not comply with D. Del. LR 7.1.1, requiring reasonable effort to resolve a dispute prior to filing a motion for relief. Neither of these arguments are persuasive. Even the Department concedes that Joy's February 14, 2008 assertion of privilege and work product objections was within the 30 days Joy was allotted to respond to January 15, 2008 discovery requests. (D.I. 357 at 14 n.4) The additional two months that passed before the Motion for Protective Order was filed reflect a reasonable passage of time as "[t]he parties engaged in extensive efforts to reach agreement on their disputes." (D.I. 357 at 2) The

---

[4]Joy also argues that there was no waiver at the ERISA trial because all of the witnesses whose testimony the Department asserts constituted a waiver were officers or directors of Beloit, not of Harnischfeger or Joy. (D.I. 348 at 6) Relying on *In re Teleglobe Communications Co.*, 493 F.3d at 379, in which the Third Circuit held that "[o]ne co-client does not have authority to waive the privilege with respect to another co-client's communications to their common lawyer," Joy asserts that at trial "Beloit's agents [did] not waive Joy's privilege even if they waived Beloit's privilege" (D.I. 359 at 11). In response, the Department questions whether *Teleglobe* applies where former co-clients had, at the time of the purported waiver, been subsumed within another entity and were no longer separate entities. (D.I. 353 at 26-27) Because the Court finds there has been no waiver, it is not necessary to reach this issue.

Department itself has explained that "[b]etween February 15 and April 15, 2008, the parties engaged in extensive communications regarding Wisconsin's discovery requests." (D.I. 357 at 14-15) Moreover, the parties called chambers and sought permission to file the Motion for Protective Order and the Court communicated through chambers staff that such a filing would be accepted. (D.I. 359 at 14 n.13)

Remaining Matters

By its Motion for Protective Order, Joy seeks: (1) a declaration that Joy did not waive its attorney client privilege and work product protection with respect to K&E; (2) a prohibition on the Department further pursuing Requests Nos. 2 and 3; (3) a declaration that Joy need not produce a privilege log; and (4) clarification that Joy need not supplement its responses to the Department's 2001 document requests. (D.I. 348 at 38) The Court's rulings above on the Department's Motion to Compel address the first three of these issues. Joy's fourth issue is moot because the Department is not requesting a supplementation to the Department's 2001 request. (D.I. 357 at 27-28) For these reasons, Joy's Motion for Protective Order is DENIED AS MOOT.

Finally, the Department seeks leave to file a supplemental affidavit regarding its Motion to Compel and Joy's Motion for Protective Order. (D.I. 363) As noted above, *see supra* at 6, the Court has reviewed the materials concerning the Affidavit Motion, including, importantly, K&E's billing submission to the Bankruptcy Court for fees in November 1999 (showing various matters to which K&E billed its time). Because these documents have been reviewed and are helpful to the Court in resolving the multiple disputes before it, the Department's Affidavit Motion is GRANTED.

Conclusion

This 16th day of June, 2008, for the reasons set forth above, IT IS HEREBY ORDERED:

1. The Department's Motion to Compel (D.I. 338) is GRANTED IN PART AND DENIED IN PART.

a) No later than July 18, 2008, Joy shall produce to the Department any documents responsive to the Relevant Request (as defined within this Order).

b) To the extent Joy objects to production of any specific document responsive to the Relevant Request, it shall produce to the Department no later than July 18, 2008 a privilege log meeting the requirements set out within this Order.

c) To the extent the Department seeks to challenge Joy's withholding of any document listed on Joy's privilege log, it shall so notify Joy of the specific basis or bases for its challenge no later than August 18, 2008.

d) Subsequent to August 18, 2008, to the extent the parties are unable to resolve any disputes arising from the privilege log, they shall jointly submit a log describing the items that remain in dispute and setting out, in no more than one page per document, each party's position with respect to the production of such document. No further briefing or argument will be permitted on these matters without leave of the Court.

2. Joy's Motion for Protective Order (D.I. 345) is DISMISSED AS MOOT.

3. The Department's Motion for Leave to File Supplemental Affidavit (D.I. 363) is GRANTED.

UNITED STATES MAGISTRATE JUDGE