# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In Re:                                          :
                                                :
JOY GLOBAL, INC. f/k/a                          :
HARNISCHFEGER INDUSTRIES, INC.                  :
                                                :
                              Debtor.           :
                                                :   Civ. No. 01-039-LPS
_____        :
                                                :
JOY GLOBAL, INC. f/k/a                          :
HARNISCHFEGER INDUSTRIES, INC.                  :
                                                :
                              Plaintiff,        :
                                                :
        v.                                      :
                                                :
WISCONSIN DEPARTMENT OF                         :
WORKFORCE DEVELOPMENT,                          :
                                                :
                              Defendants.       :

## OPINION
**May 22, 2009**

Bruce Grohsgal, Scotta E. McFarland, PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB LLP, Wilmington, DE; Paul F. Linn and Kristi S. Nelson Foy, MICHAEL BEST & FRIEDLICH LLP, Milwaukee, WI, Attorneys for Plaintiff.


Stuart Drowos, Deputy Attorney General, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE; Peggy A. Lautenschlager, Attorney General and Richard Briles Moriarty, Assistant Attorney General, WISCONSIN DEPARTMENT OF JUSTICE, Madison, WI, Attorneys for Defendant.

**STARK, U.S. Magistrate Judge**

This is a bankruptcy case of long standing.  Presently pending before the Court is a motion to dismiss Defendant's amended proof of claim filed by Plaintiff Joy Global, Inc. ("Joy"),[1] as well as cross-motions for summary judgment filed by Joy and Defendant Wisconsin Department of Workforce Development ("DWD").  For the reasons set forth below, Joy's motion to dismiss the amended proof of claim will be granted, DWD's motion for summary judgment will be denied, and Joy's motion for summary judgment will be denied.

## UPDATED PROCEDURAL AND FACTUAL BACKGROUND

The lengthy background in this case was most recently set forth by this Court in December 2007, in an opinion rejecting Joy's fourth motion for summary judgment.  *See In re Joy Global*, 381 B.R. at 606-10.

### *The January 2008 Scheduling Order*

Following the Court's summary judgment ruling, a Rule 16 Scheduling Conference was held on January 11, 2008.  (D.I. 288)  During the teleconference, DWD requested additional time to amend the pleadings without leave of Court:

---

[1] Joy is the successor to Harnischfeger industries, Inc. ("Harnischfeger"), a holding company that, at all relevant times, owned 80% of the stock of Beloit Corporation ("Beloit"), the direct employer of the employees represented by the Defendant. *See In re Joy Global, Inc. v. Wisconsin Department of Workforce Development*, 381 B.R. 603, 605 (D. Del. 2007).  In the interest of clarity, this Opinion will hereinafter refer to Plaintiff as "Joy," including when referring to events that allegedly occurred prior to Plaintiff's emergence from bankruptcy proceedings as Joy.

> What we're looking at is in the course of some further discovery, we may well determine . . . these facts that we haven't been able to figure out happened because we haven't been able to talk to the folks yet and get documents, and so we're leaving some room open to say we're going to state some new claims. We've already identified some potential claims, but we want to do it at one time, and that is why we're looking at getting a date by which we amend without leave, bring in whatever claims we have, additional claims we have developed.

(D.I. 510, Tr. at 10)  However, DWD went on to suggest that any potential amendment would

differ only in the theory of recovery it would set forth: "It's going to be pretty much the same,

along the same lines but alternate theories is what we're looking at." *Id.*

> Joy responded:

> [T]his was a claim in bankruptcy and this was carved out from the resolution of the bankruptcy [court] and left standing. I'm not even sure [that DWD] can amend under those circumstances. I don't mean for that to be resolved, but if there is some dramatic amendment, that issue will probably also come into play.

*Id.* at 11-12.

On January 11, 2008, the Court entered a Scheduling Order that included the following

provision: "Subject to any limitations that may be or may have been imposed by the Bankruptcy

Code, the Federal Rules of Bankruptcy Procedure, any ruling of the Bankruptcy Court, or any

applicable local bankruptcy rules . . . amendments to the pleadings may be made without leave of

court on or before April 1, 2008 . . . ."  (D.I. 292 at 2)

### *Joy's Fifth Motion for Summary Judgment*

On January 18, 2008, Joy filed its fifth motion for summary judgment, on the grounds

that DWD lacked "authority under its enabling statute (Wis. Stat. § 109.09) to prosecute claims

for tortious interference against Joy," because the statute provides only "that DWD 'may sue the

2

employer on behalf of the employee to collect any wage claim or wage deficiency.'" (D.I. 297 at 1)

On February 1, 2008, DWD moved to limit Joy to one final summary judgment opportunity after January 1, 2009. (D.I. 301) The accompanying brief urged that "[a]fter seeking summary judgment on five separate occasions, Joy should be restricted to just one more opportunity – after the discovery cutoff date." (D.I. 304 at 3) It further argued that the "capacity to sue" defense raised in Joy's most recent summary judgment motion had been waived. *Id.* at 4-10.

On February 15, 2008, the Court issued a Memorandum Order holding, among other things, that Joy's fifth motion for summary judgment was denied without prejudice. (D.I. 317) The Court noted that "[i]t is not immediately apparent why Joy [] did not raise its current objections until this case had already been litigated for over seven years. To the Court's knowledge, at no point in any prior proceeding – in this Court, the Bankruptcy Court, or the Court of Appeals – has Joy . . . questioned what would seem to be fundamental issues as to whether [DWD] even has the right to maintain this lawsuit." *Id.* at 2. The Court also denied DWD's motion to limit Joy to one more summary judgment motion, but modified the Scheduling Order to provide that no case dispositive motions were to be filed before January 15, 2009, absent leave of the Court. *Id.* at 4.

Joy motion for reconsideration of the Memorandum Order was denied on March 11, 1008. (D.I. 318, D.I. 328)

### *DWD's Amended Proof of Claim*

On March 31, 2008, DWD filed an amended proof of claim against Joy, setting forth a new theory of liability: that Joy was subject to liability as an "employer" of the employees of its subsidiary, Beloit, within the meaning of Wisconsin's "Wage Act," § 109.01-109.03, 109.09-109.11.  (D.I. 330 at 2)  The amended proof of claim also retained from DWD's original proof of claim the alternative theory that Joy induced Beloit to change its severance policy "in ways that constituted tortious interference with . . . contract."  *Id.*  at 3.

### *Joy's Motion to Dismiss*

On April 14, 2008, Joy moved to dismiss the amended proof of claim for failure to state a claim, and, alternatively, for being time-barred.  (D.I. 340)  Joy's briefs addressed only the new theory of liability raised for the first time in the amended proof of claim and did not address the tort claim carried over from the original proof of claim.  (D.I. 340, 375)  The motion was fully briefed as of June 12, 2008.  (D.I. 375)

### *The Instant Motions for Summary Judgment*

On February 6, 2009, DWD moved for summary judgment on the merits of its tort claim and its alternate theory that Joy is liable as an employer of the Beloit employees under the Wage Act.  (D.I. 465)  On the same date, Joy filed its sixth summary judgment motion, this time with respect to both DWD's tort and "employer"-based claims.  (D.I. 473)  Joy further argued that DWD could not prove damages beyond what it had already collected from its settlement with Beloit, and revived its argument – from its previously-rejected, fourth summary judgment motion

4

– that no contract for severance existed between Beloit and its employees. *Id.* Both parties'
summary judgment motions were fully briefed as of March 5, 2009. (D.I. 485, 489)

## LEGAL STANDARDS

### *Motion to dismiss - Rule 12(b)(6)*

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires
the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372
F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but
whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat
Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted).
Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded
allegations in the complaint as true, and viewing them in the light most favorable to plaintiff,
plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000)
(internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a
right to relief above the speculative level on the assumption that the allegations in the complaint
are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007)
(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007)). While
heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible
on its face" must be alleged. *Twombly,* 127 S. Ct. at 1974. At bottom, "[t]he complaint must
state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each]
necessary element" of a plaintiff's claim. *Wilkerson v. New Media Technology Charter School*

*Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). Nor is the Court

obligated to accept as true "bald assertions," *Morse v. Lower Merion School Dist.*, 132 F.3d 902,

906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and

unwarranted inferences," *Schuylkill Energy Resources, Inc. v. Pennsylvania Power & Light Co.*,

113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*,

82 F.3d 63, 69 (3d Cir. 1996).

### *Motions for summary judgment*[2]

A grant of summary judgment is appropriate only where "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of

material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586

n.10 (1986). "When considering whether there exist genuine issues of material fact, the court is

required to examine the evidence of record in the light most favorable to the party opposing

---

[2]DWD maintains that the parties' summary judgment motions should be considered under different legal standards. It contends that because its proofs of claim are *prima facie* valid under Fed. R. Bankr. P. 3001, Joy "bears the burden of overcoming the presumptive validity of [DWD's] claims," even on DWD's motion for summary judgment. (D.I. 469 at 7, *citing In re TMI*, 89 F.3d 1106, 1116 (3d Cir. 1996)) According to DWD, Joy must "'produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.'" *Id.* (*quoting In re Allegheny Intern., Inc.*, 954 F.2d 167, 172-73 (3d Cir. 1992)). With respect to DWD's tort claim, the Court finds that Joy has produced evidence from which a factfinder might conclude that DWD will fail to prove one or more of the essential elements of its claim. Regardless of whether the Court applies Fed. R. Civ. P. 56 or some unspecified alternative bankruptcy rule, the conclusion remains that DWD is not entitled to summary judgment.

6

summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v.*

*Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The "mere existence of *some* alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48 (1986). If the moving party has carried its burden, the nonmovant must then "come

forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita*, 475 U.S.

at 587 (internal quotation marks omitted). Moreover, "[i]t is true that the issue of material fact

required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be

resolved conclusively in favor of the party asserting its existence; rather, all that is required is

that sufficient evidence supporting the claimed factual dispute be shown to require a jury or

judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49

(internal quotation marks omitted).


## DISCUSSION

The parties' arguments can be categorized as follows: 1) Joy's argument that it is entitled

to summary judgment on the issue of damages; 2) both parties' arguments that they are entitled to

summary judgment on DWD's tortious interference claim; and 3) both parties' arguments that

they are entitled to summary judgment on DWD's "employer"-based wage claim (along with

Joy's argument that the amended proof of claim adding the "employer"-based claim should be

dismissed).[3]

## I.   *Damages*

Joy argues that it is entitled to summary judgment on the issue of damages. *See* D.I. 504, Tr. at 16. Joy gives three reasons in support of its motion: first, that DWD cannot prove that Joy caused any damage to the employees; second, that further recovery on the claims would be impossible; and, finally, that DWD already recovered the full amount to which it is entitled when it settled its wage claim against Beloit. DWD responds that its settlement with Beloit expressly reserved to DWD the right to pursue claims against Joy, and notes that the Wage Act permits recovery for increased wages and attorney fees.[4] (D.I. 478 at 39)

---

[3]Joy's additional argument that it is entitled to summary judgment because there was no contract between Beloit and its employees to be interfered with was already rejected by this Court on Joy's fourth motion for summary judgment. *See In re Joy Global, Inc.*, 381 B.R. at 619-20. Joy seeks reconsideration of this ruling on the basis of the Wisconsin Supreme Court's subsequent decision in *Loth v. City of Milwaukee,* 2008 WI 129, 758 N.W.2d 766 (Dec. 30, 2008), in which a retired city employee was found not to have a contractual right to free health insurance under the plan in effect at the time he completed 15 years of service, but rather was subject to the amended, shared-cost plan in place at the time of his retirement. *Loth*, however, turned on the terms of the city plan at issue, which provided free insurance only to employees who met three qualifications – they provided 15 years of service, met a specified retirement age, and were retired from city service – the last two of which were not met by the plaintiff at the time of the plan's amendment. *Id.* at 766. The Wisconsin Supreme Court distinguished the long line of deferred benefits Wisconsin cases – on which this Court relied – on the grounds that the terms of the city's offer to the plaintiff merely conferred a benefit that was earned "at a single designated date" (i.e., the date on which the employee met all three qualifications). *Id* at 772, 775. This Court has already considered the terms of Beloit's 1996 severance policy and found that, "because the . . . policy does not expressly address when the Employees' rights to severance benefits would vest, Wisconsin law presumes they vested at some point during the employment relationship." *In re Joy Global*, 381 B.R. at 620. Nothing in *Loth* mandates a different conclusion.

[4]Wis. Stat. § 109.11(2)(b) provides that "a circuit court may order the employer to pay to the employee, in addition to the amount of wages due and unpaid to an employee . . . increased

Joy's first two arguments center on the consequences of Beloit's bankruptcy. Joy argues that "because Beloit was deeply insolvent, and thus, unable to pay any more benefits that it did, [Joy's] alleged conduct caused no damages;" that is, Joy asserts DWD is in error to "simply assume[] that Beloit would have paid off all of the former employees . . . under Beloit's 1996 policy [had Joy not allegedly interfered]." (D.I. 489 at 12) According to Joy, all that remained available to the employees was "a general unsecured claim against a company whose liabilities exceeded its assets by a billion dollars." (D.I. 504, Tr. at 14)

Contrary to Joy's contention, there is a genuine material dispute as to whether the employees suffered any damages as a result of Joy's alleged actions. Notwithstanding the fact that Beloit's debts far exceeded its assets, other employees – those subject to "Severance Policy # 2," which applied to employees of other units Beloit was selling – appear to have been paid a greater percentage of severance benefits than the employees DWD represents in this action. *See In re Joy Global*, 381 B.R. at 607; *see also* D.I. 504, Tr. at 71 (Joy's counsel conceding he "cannot . . . say no general unsecured claim was improperly paid during this bankruptcy. There were all sorts of solutions to severance problems."). Therefore, the fact of the bankruptcy alone does not establish that the employees now before the Court never had a chance of recovering more than they have obtained to date. Moreover, the employees have been damaged procedurally: they have had to file suit, assign their claims to DWD, and wait while their case continues to be litigated more than eight years after the original proof of claim was filed.[5] Under

---

wages of not more than 100% of the amount of those wages due and unpaid."

[5]*See* D.I. 504, Tr. at 38 (DWD stating: "Unlike other workers, they've had to battle all these years just to get before the Court on these very issues.").

9

the circumstances, there is no basis on which to conclude as a matter of law that there has been no harm whatsoever to the employees as a result of the 1999 amendment.

Joy's third argument is that, pursuant to this Court's 2001 priority determination – in which Judge McKelvie found that only a limited amount of any severance found to be owed to the employees would be granted "administrative priority status" – the employees "got the most they could have gotten from Beloit under the '96 plan." (D.I. 504, Tr. at 9) Judge McKelvie found that *In re Public Ledger*, 161 F.2d 762 (3d Cir. 1947), mandated that the claims be divided into three priority classes: severance pay earned post-petition was allocated administrative priority status under 11 U.S.C. § 503(b)(1), severance earned within 90 days of the petition was allocated third priority status under 11 U.S.C. § 507(a)(3), and severance earned more than 90 days before the petition date was classified as a general unsecured claim. *See In re Harnischfeger*, 270 B.R. 188, 194-95 (D. Del. 2001). After this priority determination was affirmed by the Third Circuit, DWD settled its breach of contract claim against Beloit for $490,525.35 – the combined total of the severance pay entitled to administrative expense priority ($318,523.36) and third priority claim status ($172,002). (D.I. 121, 123) Thus, according to Joy, Beloit has already made the workers as whole as possible and DWD "cannot recover twice for the same aggregate sum for expectation damages and litigation costs, including attorney fees, for breach of the 1996 benefit schedule." (D.I. 473 at 39-40)

Joy's argument does not provide a basis for granting it summary judgment. Even if Joy is correct that any judgment DWD might obtain in this action will be merely a general unsecured

claim against Beloit, an assessment with which DWD appears to agree,[6] that is not a reason to grant summary judgment for Joy and deprive DWD of its chance to obtain (and quantify) such a general unsecured claim. Whether DWD's pursuit will ever yield it any further financial recovery, and whether Joy or anyone else thinks the pursuit worthwhile, are not reasons for the Court to prohibit DWD from seeking to do so.[7]

## II.   *DWD's Tortious Interference Claim*

The parties' cross-motions for summary judgment address: 1) Joy's argument that DWD lacks the statutory authority to bring a claim for tortious interference with contract, and DWD's response that Joy's argument is waived; and whether 2) DWD or 3) Joy is entitled to summary judgment on the merits of the tort claim.

### 1.   *Joy's "Capacity to Sue" Defense*

Joy argues that it is entitled to summary judgment on DWD's tortious interference claim because DWD is acting outside its authority in bringing a suit not contemplated by its enabling

---

[6]*See* D.I. 504, Tr. at 39-40 (counsel for DWD stating that if DWD's tortious interference claim is all that remains, DWD will have only general unsecured claim to Beloit assets).

[7]The cases cited by Joy – *Dehnart v. Waukesha Brewing Co.*, 21 Wis. 2d 583, 596 (1986) (deducting unemployment compensation benefits charged against the employer from damages owed by the employer, so that plaintiff would not "be placed in a better position than if the contract had not been breached") and *St. Paul Fire & Marine Ins. Co. v. Keltgen*, 260 Wis. 2d 523, 545 (2003) (finding that it would be duplicative to allow a plaintiff to recover twice for pain and suffering under two different statutes) – support the proposition that a "double recovery" (i.e., multiple recoveries for the same claim or damage) is not appropriate. DWD's present efforts do not run afoul of this principle, in that DWD is seeking recovery for tortious injury caused by Joy, while its previous recovery was for a distinct statutory harm caused by Beloit.

11

statute, Wis. Stat. § 109.09, which empowers DWD only to "sue the employer on behalf of the employee to collect any wage claim or wage deficiency." Because Joy first raised this argument on its <u>fifth</u> motion for summary judgment, which it filed in January 2008 (D.I. 297) – seven years after it had moved to withdraw the reference to the Bankruptcy Court – the Court finds that Joy has waived its opportunity to present this argument.

Joy's argument may be classified as a Fed. R. Civ. P. 9(a) "capacity to sue" challenge to DWD's authorization to sue in tort, which should been raised by "specific negative averment;" or an *ultra vires* affirmative defense that DWD is acting in excess of its statutory authority;[8] or, instead, some other type of "affirmative defense [to be] treated as waived if not asserted by motion or responsive pleading." *De Saracho v. Custom Food Machinery, Inc.*, 206 F.3d 874, 878 (9th Cir. 2000) (internal citation omitted) (refusing to consider capacity to sue argument raised one week before trial was scheduled to begin); *see also Merrill Tenant Council v. U.S. Dept. of Housing and Urban Development*, 638 F.2d 1086 (7th Cir. 1981) (refusing to consider for first time on appeal argument that federal defendants acted *ultra vires* their statutory authority); *N.A.A.C.P. Labor Committee of Front Loyal, Va. v. Laborers' Intern. Union of North America,* 902 F.Supp. 688, 699 (W.D.Va. 1993) (defendants waived meritorious capacity to sue argument by raising it more than two years after action was filed);. Regardless of the precise characterization, however, one conclusion is inescapable: Joy's argument comes too late.[9]

_____

[8] *See Bank of Nova Scotia v. Cartwright & Goodwin, Inc.*, 611 N.Y.S.2d 770, 771 (N.Y. City Civ. Ct. 1994) ("The defense of ultra vires is an affirmative defense, which must be pleaded"); *see also* 61A Am. Jur. 2d Pleading § 326.

[9] One thing Joy's argument is <u>not</u> is an argument that DWD has failed to state a claim on which relief may be granted, which is what Joy calls its argument. (*See* D.I. 504, Tr. at 17.) As DWD correctly observes, if the argument that a litigant lacks the right even to file a particular

12

Joy had at least two significant opportunities to raise its capacity to sue argument yet failed on both occasions to do so. The first period of opportunity ran from November 2000, when DWD filed its original proof of claim – containing the tortious interference claim – until December 2001, when Judge McKelvie granted Joy's first motion for summary judgment (D.I. 13) on grounds on which Joy had chosen to move. The second period of opportunity began when the ERISA issue was resolved in July 2006 (D.I. 238) and extended at least through November 2006 – when Joy filed its fourth summary judgment motion (D.I. 257).

Joy argues that it should not be faulted for failing to move on the capacity to sue argument during the first interval (2000-2001) because it prevailed on other grounds; that is, Joy "quickly obtained summary judgment on the merits based on Judge McKelvie's decision that Beloit was free to amend its severance policy at any time until severance." (D.I. 489 at 7) The fact that Judge McKelvie's decision was subsequently vacated lays bare the risk Joy took by not raising a waivable affirmative defense within a reasonable period of time.

As for the second interval (2006-2007), Joy contends that it was limited at that time to "the law of the case motion [Judge Jordan] essentially invited Joy . . . to file." *Id.* at 8; *see also* D.I. 504, Tr. at 11 ("Given that request from Judge Jordan, it would not have been appropriate to raise other issues in that [motion]."). The Court disagrees. Judge Jordan did not say what Joy suggests he said.[10] Equally important is that Joy did not act at the relevant time as if it believed

---

type of claim were treated as an argument that the litigant has failed to state a claim, there would be no need to have a rule and procedure to govern the former situation. (*See* D.I. 504, Tr. at 44.)

[10]*See* D.I. 253, Tr. at 6, 8 (Judge Jordan explaining his intention to stay discovery while the Court considered the "prospect that this is going to go away on a purely legal issue instead of a factual one" and further stating that the parties had "some law of the case issues to deal with and I'm going to make you deal with them").

Judge Jordan had limited it to moving solely on law of the case grounds.  Instead, Joy's fourth summary judgment motion raised the additional argument that DWD had waived its opportunity to litigate the tort claim on remand.  *In re Joy Global*, 381 B.R. at 612-16.  Consistent with its view that Judge Jordan did not limit Joy to the law of the case motion, the Court did not limit its analysis to Joy's law of the case argument.  Rather, over DWD's protest, the Court reached (and rejected) Joy's waiver argument as well.  *Id.* at 612.

Joy asserts that it should be allowed to pursue its new argument because "DWD gave up nothing and suffered no prejudice" as a result of Joy's delay, in that DWD never had the right to pursue its tort claim in the first instance.  (D.I. 489 at 8)  This is incorrect.  Even assuming, *ab initio*, DWD could not press its tort claim, DWD has now expended masses of resources – in time and money – litigating its tort claim.  Joy, as well as the Court (actually, several courts; i.e., the Court of Appeals, the District Court, the Bankruptcy Court), have, for nearly a decade, also proceeded as if DWD could press this claim, as Joy never suggested otherwise.  At some point, DWD was entitled to conclude that if Joy believed DWD lacked capacity to file the tort claim, DWD had decided not to raise this issue.  That point was reached here no later than the filing of Joy's fourth summary judgment motion in November 2006.[11]

---

[11] Joy further argues that, "as this is a bankruptcy case, DWD never filed a 'complaint' to which Joy . . . had to file an 'answer' or raise affirmative defenses," and Joy "only had to list the claim as disputed on its schedules."  (D.I. 489 at 7, *citing* 11 U.S.C. §§ 1106(a)(2), 111(a))  Even assuming Joy has accurately described bankruptcy procedure, Joy has cited nothing to suggest (much less compel) a conclusion that a district court should permit a debtor to litigate four summary judgment motions over eight years and only thereafter finally argue to the Court that the claimant lacked capacity to file its claim all along.

14

### 2.    *Genuine Dispute of Material Fact*

Both parties move for summary judgment on the grounds that the material evidence not in dispute shows that Joy did (according to DWD) or did not (according to Joy) tortiously interfere with the employees' entitlement to severance benefits by participating in the adoption of the amended severance plan.  DWD contends that it has demonstrated by undisputed evidence that Joy intentionally interfered with the severance policy, which was a "substantial factor" in the amendment.  (D.I. 469 at 13)   Joy contends, to the contrary, that Beloit acted to amend its severance policy without interference from Joy.  (D.I. 473 at 22)  The Court finds that a genuine dispute of material fact exists as to how the decision to amend Beloit's 1996 policy was reached. Accordingly, the parties' motions for summary judgment on the tort claim will be denied.

At the heart of the parties' dispute is the testimony by senior officers of Joy and Beloit relating to the decision to amend.  For example, Joy cites the testimony of Beloit President Mark Readinger that he made the decision to amend the 1996 policy.  (D.I. 473 at 22, citing D.I. 474, Plaintiff's Proposed Findings of Fact 25, 2-28)  DWD points to Readinger's further testimony that "during the last six months of 1999" – that is, the period in which the amendment occurred – Readinger "viewed himself as being a Senior Vice President of [Joy] and President of Beloit." (D.I. 470, Defendant's Proposed Undisputed Fact 190, citing 8/6/08 Readinger Depo., 54/10 to 55/18)  Moreover, DWD cites Readinger's testimony that a telephone call from Robert Dangremond, a senior officer at Joy, served as the "instigator" in Readinger's taking action to amend the policy; Readinger testified he would not have considered amending the policy had he not received the call.  (D.I. 470, Defendant's Proposed Undisputed Findings of Fact 106-108, citing 8/6/08 Readinger Depo., 122/10-19)  Dangremond himself testified that he did not

15

remember a conversation urging a change to Beloit's severance policy but had no reason to doubt that it had occurred. (D.I. 470, Defendant's Proposed Undisputed Finding of Fact 104) The parties further dispute whether Dangremond could have reasonably been perceived as speaking for Joy at the time of the alleged call, as DWD maintains (D.I. 485 at 8-9), or whether his status as an employee of the firm Jay Alix, "whose services for all of the debtors had been approved by the bankruptcy court," placed him sufficiently outside of Beloit to be considered a tortious interferer with Beloit's severance policy, as Joy contends (D.I. 480 at 16).

Plainly, these are material factual matters (and there may be others) on which there are genuine disputes in the record. They will be resolved by trial.

### 3. *The Privilege Exception*

Joy argues that even assuming that Joy directed Beloit to amend the 1996 severance policy, Joy is still entitled to summary judgment on the tort claim because Wisconsin law gives a parent company, such as Joy, a privilege to interfere with its subsidiary's contractual relationship with a third party, provided that the parent does not use wrongful means to do so. (D.I. 473 at 22-25, citing *Allen & O'Hara v. Barrett*, 898 F.2d 512 (7th Cir. 1990); *Celite S.A. Industria e Comercio v. Sterling Plumbing Group, Inc.*, 80 F.Supp.2d 1009 (E.D. Wis. 2000)) DWD responds that a parent's financial interest in its subsidiary's contract with a third party applies only to prospective contracts, and does not permit the parent to interfere with an existing contract or cause an existing contract to be breached. (D.I. 478 at 24-27) DWD further claims that even if Joy's interest in Beloit permitted it to interfere with the existing policy, Joy employed "wrongful means" in doing so. *Id.* at 27-28.

16

The Court will defer ruling on the applicability of the privilege exception until after trial.

Resolution of this issue may be impacted by the evidence to be introduced at trial, particularly

evidence with respect to interference and wrongful means.

## III.    *DWD's Amended Proof of Claim: The "Employer" Theory of Liability*

Joy moves to dismiss DWD's amended proof of claim, which sets forth an alternate

theory of liability that characterizes Joy as an "employer" of the Beloit employees within the

meaning of the Wage Act, Wis. Stat. § 109. DWD alleges:

> Joy Global, an eighty percent (80%) owner of Beloit, was substantially involved
> in human resources policies of Beloit, made decisions regarding the disposition of
> Beloit and its assets, induced actions of Beloit regarding the disposition of Beloit
> and its assets, induced actions of Beloit regarding the payment of employee wages
> and was otherwise actively involved in the internal operations of Beloit. As such,
> Joy Global was a company engaged in an activity, enterprise or business that
> directly employs employees for purposes of the severance pay due and owing to
> the former Beloit employees, and, under the Wage Act, is liable for its actions.

(D.I. 330 at 2) Joy argues that the amended proof of claim is untimely and fails to state a claim

under Stat. § 109. (D.I. 340 at 19-23; 7-19) Joy has also moved for summary judgment on the

issue, arguing that it was merely a majority shareholder in Beloit and was not an "employer" to

its workers within the plain meaning of the statute. (D.I. 473 at 27-35)

DWD responds that "Joy freely consented to amendments, without leave of Court, for all

purposes except the addition of parties" and that "Joy knew, when it consented, that any

amendment would be made long after the proof of claim was filed." (D.I. 371 at 22) DWD has

also moved for summary judgment on its new theory of liability, arguing that the relevant law –

17

including the U.S. Department of Labor's test for determining affiliated corporate liability under the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. § 2101 – mandates a determination that Joy is liable as an "employer" under Ch. 109. (D.I. 469 at 14-23)

The Court agrees with Joy that the amended proof of claim is impermissibly late. Therefore, there is no need to reach the question of whether the new claim is also subject to dismissal on the merits, nor whether either party is entitled to summary judgment.

Joy has submitted, and DWD has not denied, that the claim bar date in the bankruptcy case expired on February 29, 2000, over eight years before DWD filed its amended proof of claim. (D.I. 340 at 4, citing Bankr. Case No. 99-02171, D.I. 1742) As set out in the Background above, Joy did not "freely consent" to any possible amendments DWD might propose, as DWD would have it (D.I. 371 at 22), but instead suggested at the Scheduling Conference that it would oppose "some dramatic amendment." (D.I. 510, Tr. at 12) The Court then proceeded to issue a Scheduling Order permitting amendments to the pleadings without leave of the Court only "[s]ubject to any limitations that may be or may have been imposed by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, any ruling of the Bankruptcy Court, or any applicable local bankruptcy rules." (D.I. 292 at 2) (emphasis added) The claims bar date set forth in the bankruptcy proceeding is one such limitation.

DWD argues that "amendments to timely proofs of claim should be liberally permitted," but does not offer any equitable considerations that would justify its delinquency. (D.I. 371 at 29) Instead, DWD points to the Court's order "ceas[ing] every aspect of the litigation regarding the wage claim until Joy's ERISA preemption defense was resolved" in 2006; DWD also argues that it could not have sought to amend even after the ERISA decision because "Joy obtained a

18

further stay to file another summary judgment motion" (D.I. 371 at 29), which was resolved only a month before the Scheduling Conference. *Id.* DWD is imagining obstacles, as it overlooks the fact it had at least two significant opportunities to amend (or seek leave to amend) its claim prior to 2008: 1) at some point prior to December 5, 2001, when Judge McKelvie entered summary judgment for the debtors; and 2) after the ERISA issue was resolved by the Court in July 2006, as the only stay in place at the time was merely a stay of discovery. And while DWD represented at the January 2008 Scheduling Conference that it hoped to set forth additional claims enhanced with facts gleaned on discovery – *see supra* at 1-2 – it ultimately filed an amended proof of claim based on the same factual allegations it set forth in 2000. DWD's amendment, which proffers an alternate theory of recovery based on its enabling statute, was made two months after Joy moved for summary judgment on the grounds that the statute did not empower DWD to bring a tort claim, which was at the time all that remained of its original proof of claim. *See* D.I. 297. DWD had ample opportunity to try to amend earlier, but was as remiss as Joy was in challenging DWD's authority to bring the tort claim. It will be held to the same standard.[12]

Accordingly, DWD's "employer"- based liability claim will be dismissed.

---

[12]DWD argues that a bankruptcy proof of claim is not subject to dismissal under Rule 12(b)(6), citing *Allegheny*, 954 F.2d at 173, which holds that the burden of proof in a bankruptcy proceeding "rests on different parties at different times," and requires the objector to negate the *prima facie* validity of the proof of claim (which the Court has already concluded has occurred here). DWD does not explain what rule, if any, relates to the dismissal of a proof of claim for being time-barred, but instead argues that "deficiencies in a proof of claim do not result in dismissal; at worst, they deprive the claim of presumptive validity." (D.I. 371 at 10) The Court does not hold that the amendment is deficient, but rather that it is time-barred, regardless of which rule is applied.

## CONCLUSION

For the reasons set forth above, the Court will grant Joy's motion to dismiss DWD's amended proof of claim, deny Joy's motion for summary judgment, and deny DWD's motion for summary judgment. An appropriate Order follows.