# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: | : |
| | : |
| JOY GLOBAL, INC. f/k/a | : |
| HARNISCHFEGER INDUSTRIES, INC. | : |
| | : |
| Debtor. | : |
| | : Civ. No. 01-039-LPS |
| | : |
| JOY GLOBAL, INC. f/k/a | : |
| HARNISCHFEGER INDUSTRIES, INC. | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| WISCONSIN DEPARTMENT OF | : |
| WORKFORCE DEVELOPMENT, | : |
| | : |
| Defendant. | : |

## **MEMORANDUM ORDER**

Pending before the Court is the Motion of the Wisconsin Department of Workforce Development ("DWD" or "the Department") to Amend or Add to Factual Findings, to Alter or Add to Legal Conclusions, and to Alter or Amend the Judgment Pursuant to Fed. R. Civ. P. 52(b) and 59(e) ("Motion" or "Mot."). (D.I. 565) DWD requests extensive revisions to the Court's post-trial Opinion of September 21, 2010 (D.I. 563) (hereinafter, "Opinion" or "Op."), and also that the Court "enter[] a Judgment in favor of the Department and against Joy Global" (D.I. 565 at 2). Plaintiff, Joy Global, Inc. ("Joy Global"), asks that DWD's Motion be stricken and/or denied. (D.I. 567) For the reasons set forth below, the Motion is STRICKEN and DENIED.

1

I. <u>**Violation of Local Rules**</u>

The Court conducted a bench trial on March 1-3, 2010. (D.I. 550-52, hereinafter "Tr.") Following post-trial briefing, on September 21, 2010 the Court issued an Opinion, containing Findings of Fact and Conclusions of Law. (D.I. 563) On the same day, the Court entered an Order granting judgment in favor of Joy Global and against DWD. (*Id.* at 1)

On October 18, 2010, DWD filed its 37-page Motion. (D.I. 565) The next day, October 19, 2010, DWD added a 29-page brief supporting the Motion. (D.I. 566, hereinafter "Brief")

District of Delaware Local Rule 7.1.3(a)(4) states: "No opening or answering brief shall exceed 20 pages, and no reply brief shall exceed 10 pages, in each instance exclusive of any table of contents or table of citations." DWD's 29-page Brief, plainly, exceeds the page limit imposed by the Local Rule. Moreover, DWD's 37-page Motion is, in essence, another brief, which itself exceeds the Court's page limitations. Together, DWD's 66 pages of briefing constitute a gross violation of the Court's Local Rules.

At no time prior to filing its Motion or Brief did DWD seek leave to file an over-length Motion or Brief.[1] DWD's violation of the Court's rules prejudiced Joy Global, which had to evaluate and respond to more than three times as much argument than would have been necessary had DWD complied with the Local Rules. DWD's filings also imposed an undue

---

[1] Only after Joy Global filed its Answering Brief, requesting that the Motion and Brief be stricken for violating the Court's Local Rules (D.I. 567 at 2), did DWD belatedly seek leave to submit over-length filings or to refile papers that comply with the Local Rules (D.I. 568; D.I. 569 at 1-2). The Court entered an Oral Order stating: "DWD's Motion to Replace Initial Brief Or Alternatively Allow Page Limits to Be Exceeded (D.I. 568) is DENIED. The Court will consider DWD's initial 29-page overlength brief (D.I. 566) and 37-page motion (D.I. 565) and will determine, in connection with its review of the merits of DWD's motion (D.I. 565), whether to strike DWD's original filings." (D.I. 571) Having now undertaken such analysis, the Court has, for the reasons stated, decided to strike the Motion and Brief.

2

burden on the Court.

Joy Global asks the Court to strike DWD's Motion and Brief. (D.I. 567) Under the circumstances, such a sanction is both reasonable and appropriate. *See* D. Del. LR 1.3(a) ("Sanctions may be imposed, at the discretion of the Court, for violations of the Rules, as well as for violations of the Fed. R. Civ. P. and any order of the Court. Such sanctions may include, but are not limited to, costs, fines and attorneys' fees imposed on the offending party and that party's attorney."); D. Del. LR 1.3(b) ("Likewise, failure of counsel to comply with the Rules relating to motions may result in the determination of the motion against the offending party."). Accordingly, the Court STRIKES DWD's Motion and Brief.

## II. Fed. R. Civ. Proc. 52(b) and 59(e)

Although DWD's Motion and Brief are STRICKEN, the Court will – just as it did in the Opinion (Op. at 39 n.4) – reach the other issues raised by the parties. Having undertaken the necessary analysis, the Court concludes that all of the relief requested by DWD is DENIED.

DWD's Motion is brought pursuant to Federal Rules of Civil Procedure 52(b) and 59(e). Rule 52(b) provides: "[o]n a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings – or make additional findings – and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59." In turn, Rule 59(e) provides: "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."

"The purpose of a Rule 52(b) motion is to correct manifest errors of law or fact or, in some limited situations, to present newly discovered evidence." *Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, 762 F. Supp.2d 710, 717 (D. Del. 2011) (internal

3

quotation marks omitted). "[S]everal courts have [also] noted that the standard for a 52(b) motion is identical to the standard for a 59(e) motion to alter a judgment." *See id.* at 717 n.4. "A proper Rule 59(e) motion ... must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010).

"A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made." *Lazaridis v. Wehmer*, 2009 WL 5227659, at *1 (D. Del. Jan. 14, 2009). "[R]eargument and reconsideration requests are not a substitute for an appeal from a final judgment." *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990) (internal quotation marks omitted). Moreover, the availability of such motions is not intended "to allow for endless debate between the parties and the Court." *Id.* (internal quotation marks omitted).

Here, DWD fails to satisfy the standards for relief under either Rule 52(b) or Rule 59(e). DWD does not identify any manifest or clear errors of law or fact, newly discovered evidence, an intervening change in controlling law, or any need to prevent manifest injustice.

Instead, DWD essentially seeks to rewrite the Court's Opinion, specifically seeking alteration of as many as 20 of the Court's 108 Findings of Fact ("FF")[2] and reversal of several of the Court's Conclusions of Law. In almost all instances, DWD's arguments amount to a rehash of its previous arguments already rejected by the Court.

---

[2]DWD is not always consistent in identifying the specific Findings of Fact it seeks to amend. *Compare* D.I. 565 at 2 (identifying FF 27, 28, 29, 30, 38, 40, 48, 52, 55, 57, 63, 67, 71, 72, 73, 74, 77, 83, 91) *with id.* at 12 (identifying FF 29, 30, 38, 40, 48, 52, 55, 57, 63, 67, 71, 72, 73, 74, 77, 83, 91, which adds FF 66 to prior list but omits FF 27 and 28) *and id.* at 12-35 (providing narrative argument regarding amendment of FF 29, 30, 38, 40, 48, 52, 55, 57, 63, 66, 67, 71, 72, 73, 74, 77, 81, and 91).

4

In many instances, DWD directly challenges the Court's credibility findings and decisions as to the reasonable inferences that may be drawn from the evidence presented at trial. *See, e.g.*, D.I. 565 at 16 (faulting Court for making finding based on Readinger's perception, as "that perception is ill-based," given what DWD views as "Readinger's lack of knowledge"); *id.* at 20 (arguing that Committee was "f[a]r more likely referencing" other major contracts rather than severance contracts); *id.* at 23 (faulting Court, with respect to FF 63, for relying on testimony that purportedly "is demonstrably false"); *id.* at 26 (noting "the numerous reasons to disbelieve all of his [Chokey's] testimony"); *id.* at 28 (stating that "[t]here is no basis, anywhere in the record for either the first or second sentence of FF 73. Even if there were, those findings would [be] overwhelmingly outweighed by the contrary evidence in the record.").

In some places, the Motion admits that the Court had an evidentiary basis for its findings and conclusions, but still asks that the Court look again at the very same evidence and come to a completely different result. *See,* e.g., D.I. 565 at 33 (contending, with respect to FF 91, "no evidence – ***other than*** the second-hand statements that Readinger heard from Harnischfeger through Dangremond – suggest that the Committee ever actually wanted Beloit to stop paying severance, much less that it expressed any such viewpoint to the Debtors") (emphasis added); *see also id.* at 34-35 (repeating "[n]o evidence – other than" phrase three more times); D.I. 565 at 32 ("The second sentence of FF 81 reflects what Winkleman testified to, but the overwhelming record evidence is to the contrary.").

Throughout its Motion, DWD also complains of the Court's word choice, and proposes to add or delete phrases, sentences, and even paragraphs to or from the Court's Opinion. *See, e.g.*, D.I. 565 at 12 (identifying certain "language that should [be] added through underlining (e.g.,

5

language to add) and language that should be omitted through strikeouts (e.g., ~~language to omit~~)"); id. at 15 (suggesting Court omit sentence from Opinion because it is "irrelevant," and its inclusion wrongly "conveys that it has relevance"); id. at 16 (complaining of second sentence of FF 40 "[a]s worded"); id. at 21 (stating in FF 55 "[a] sentence should be added, between the second and third sentences"); id. at 22 (arguing that "second and third sentences of FF 63 should be omitted"); id. at 25 ("FF 71 should be amended to insert between the first and second sentences, the following [five new sentences].").

In its Brief, DWD reveals the thinking behind its Motion: "[t]he Department submits that the Opinion is a potentially excellent product that is in need of a rewrite – and a new ending." (D.I. 566 at 1) However, "this Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Brambles*, 735 F. Supp. at 1240 (internal quotation marks omitted). After presiding over trial, and considering the detailed post-trial briefs, the Court issued its 62-page Opinion, containing its Findings of Fact and Conclusions of Law. The Court issued the Opinion the Court felt was warranted by the evidence and the law. DWD has an opportunity to pursue appellate review. DWD's hope to rewrite the Opinion, however, is not a proper basis for relief.

It is not necessary to dissect each of the specific contentions made in DWD's lengthy Motion and Brief. Having reviewed each of them, the Court concludes that none constitute a meritorious basis for relief under either Rule 52(b) or Rule 59(e). Accordingly, again, the Motion is DENIED.

## III. <u>Intent</u>

DWD moves for alteration or amendment of the Court's Conclusions of Law regarding

"whether the Department proved the intent element." (D.I. 565 at 2) DWD argues: "the intent element could be proven through two alternate methods, one involving purpose and the other involving predictability. This Motion focuses on the second alternate method." (*Id.* at 3) The bulk of DWD's Brief is devoted to this argument. (D.I. 566 at 13-24) In DWD's view, "[r]egardless of whether the Department proved the intent element through the first alternate method, the preponderance of the evidence established as a matter of law that it was certain or reasonably certain that Harnischfeger's actions, through Dangremond, would interfere with the severance contracts between Beloit Corporation and the former Beloit workers whose claims are pursued by the Department." (*Id.* at 22)

As Joy Global points out (D.I. 567 at 1), under Wisconsin law – pursuant to what DWD now calls the "predictability" theory – a party may prove intent when it is apparent at the outset that the alleged tortfeasor acted with the intention to interfere with the prospective contract or acted in such a fashion and for such purpose that he knew that the interference was certain, or substantially certain, to occur. *See Foseid v. State Bank of Cross Plains*, 197 Wis. 2d 772, 790 n.11 (Wisc. Ct. App. 1995).

The Opinion demonstrates that the Court recognized and considered DWD's "predictability" theory of intent. For instance, in describing the "Legal Standard for Tortious Interference," the Court stated: "[l]iability will be found only when the actor ***knew that the interference was certain, or substantially certain, to occur***." (Op. at 36) (internal quotation marks omitted; emphasis added) Also, Plaintiff "must prove that (defendant)'s prime purpose was to interfere with the contractual relationship (plaintiff) had with (3rd party) or (defendant) ***knew or should have known that such interference was substantially certain to occur*** as a

7

result of the conduct." (*Id.* at 36-37) (internal quotation marks omitted; emphasis added) "To demonstrate such intentionality, the record must show that Harnischfeger *either* had as its 'prime purpose' the interference with the former Beloit employees' right to severance *or knew that interference with the Beloit employees' severance rights was substantially certain to occur as a result of Harnischfeger's conduct.*" (*Id.* at 45) (emphasis added) Elsewhere, the Opinion concluded: "In the end, DWD simply has not proven that the 'prime purpose' of Harnischfeger's communication to Beloit through Dangremond was to interfere with the Beloit employees' contractual rights to severance. *Nor has DWD proven that Harnischfeger knew or should have known that it was substantially certain that Beloit would change its severance policies in response to Harnischfeger's communication to Beloit.*" (*Id.* at 50) (emphasis added)

The essence of DWD's argument is as follows: "when Dangremond told Readinger that the Committee wanted Beloit to eliminate severance, it was certain or reasonably certain that this initial contact would interfere with the contractual rights of the former workers whose rights are pursued by the Department." (D.I. 565 at 4) In this way, DWD's "predictability" theory of intent is merely a rehash of the argument DWD presented at trial and in its post-trial briefs. The Court finds no proper basis to reconsider the findings and conclusions contained in the Opinion. Thus, DWD's Motion is DENIED.

## IV. Scope of Interference

DWD moves for alteration or amendment of the Court's Conclusions of Law "regarding the scope of Harnischfeger's interference." (*Id.* at 2) Specifically, DWD complains that the Court made "the erroneous legal assumption . . . that interference by Harnischfeger was restricted to the initial contact by Dangremond." (*Id.* at 7) In other words, the Court "erred as a matter of

8

law ... in determining that Harnischfeger's interference was restricted to the initial contact that Dangremond made with Readinger – telling him that the Creditor's Committee wanted Beloit to eliminate severance." (D.I. 566 at 10)

The Court found that DWD met its burden in proving the essential element of interference. See Op. at 40-44. Even had the Court found a more extensive scope of interference by Harnischfeger, this would not have altered the Court's determination that DWD failed to prove the separate essential element of intent. In short, DWD's contention regarding the scope of interference provides no basis for the relief it seeks. Accordingly, again, DWD's Motion is DENIED.

## V. Financial Interest Privilege

DWD moves for alteration or amendment of the Court's Conclusions of Law regarding "whether Joy Global proved its financial interest privilege." (D.I. 565 at 2) According to DWD, "the determination that Joy Global proved its financial interest privilege defense resulted from manifest errors of law." (*Id.* at 8) DWD finds "a complete absence of proof by Joy Global about why Harnischfeger, through Dangremond, interfered with the severance contracts between Beloit and the former workers represented by the Department." (*Id.* at 10-11)

Joy Global responds that the fact that the "alleged interference enhanced Beloit's value – i.e., the value of the asset Harnischfeger owned – demonstrates the absence of any basis to DWD's argument that Harnischfeger's alleged interference 'did not further [Harnischfeger's] economic interest in Beloit's assets.'" (D.I. 567 at 11) (quoting D.I. 566 at 25) The Court agrees with Joy Global that "Harnischfeger had an undisputable economic interest in its subsidiary [Beloit], and its purported interference enhanced the value of an asset it owned (Beloit) and

9

furthered Harnischfeger's legal interest to ensure that its subsidiary received accurate information about what the Committee wanted." (D.I. 567 at 2)

The Court finds no proper basis for DWD's requested relief with regard to the Court's Findings of Fact and Conclusions of Law regarding the financial interest privilege. Therefore, again, DWD's Motion is DENIED.[3]

## VI. Evidentiary Objections

Finally, DWD contends "it was a manifest error of law to conclude that the Department had waived its evidentiary objections." (D.I. 565 at 1; *see also id.* at 23 ( "Manifest errors of law and fact were committed in determining that the Department had waived all evidentiary objections . . . .")) This outcome "resulted from an abuse of discretion in how the court structured resolution of the objections it had allowed to accumulate." (*Id.* at 23; *see also* D.I. 566 at 3 ("Given the mountain of objections that the court allowed to accumulate without resolution, the manner in which the court structured resolution of those objections constituted an abuse of discretion."))[4]

For the reasons stated in the Opinion, the Court reiterates its conclusion that "all evidentiary objections not previously ruled upon have been waived by the parties due to their failure to brief such objections in their post-trial briefs. . . . At no point in the post-trial briefing

---

[3]To the extent Joy Global is seeking reconsideration of the Court's finding with respect to the timeliness of Joy Global's assertion of a truthful information privilege (*see* D.I. 567 at 12 n.2) – and the Court does not believe Joy Global is seeking such reconsideration – that request is denied.

[4]On November 15, 2011, DWD submitted a letter, citing this Court's opinion in *Research Foundation of State University of New York v. Mylan Pharmaceuticals Inc.*, 2011 WL 3796288 (D. Del. Aug. 26, 2011), as further support for its evidentiary arguments. (D.I. 573)

10

did either DWD or Joy Global do what was required to maintain its evidentiary objections." Op. at 1, 3. With respect to DWD's new argument that the Court's procedure for dealing with objections constituted an abuse of discretion, the Court disagrees.

DWD further contends that, even if its objections were waived, it was plain error to rely on the challenged portions of Hiltz's deposition testimony. (D.I. 566 at 6-8) Again, the Court disagrees. The Court would reach the same Findings of Fact and Conclusions of Law even if the objected to portions of the Hiltz deposition were not part of the record. There is other evidence to the same effect as the objected to portions of the Hiltz deposition.[5] Sustaining DWD's objections to the Hiltz deposition would not alter the balance of the evidence on any material point. Again, then, DWD's Motion is DENIED.

## CONCLUSION

Accordingly, for the reasons stated above, DWD's Motion (D.I. 565) is **STRICKEN** and **DENIED**.

November 22, 2011
Wilmington, Delaware

UNITED STATES DISTRICT JUDGE

---

[5]Other evidence supporting the points on which the Court cited Hiltz is contained in the Opinion. (*See* FF 62 (stating Carol Ann Mohr, 21-year Harnischfeger employee with responsibility for benefits, testified Harnischfeger "had no jurisdiction over [Beloit's severance] plan," which "was strictly handled at the Beloit Corporation level"); FF 63 (stating Ross Altman, Beloit's General Counsel, never observed Harnischfeger direct Beloit's corporate activities)); Op. at 52 (describing Chokey's trial testimony that Committee, not Harnischfeger, was entity pressuring Beloit about its severance, and that Beloit operated generally with high degree of corporate independence from Harnischfeger); Op. at 53 (describing Mohr deposition testimony); *see also* D.I. 567 at 1) The supplemental nature of the Hiltz testimony to which the Court cited is reflected in the Court's use of phrases such as "Similarly" (Op. at 53) and "*See, e.g.,*" (Op. at 46) in several of the portions of the Opinion to which DWD objects.

11